# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00041-CR

**Bill Boyd Kuhn, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT NO. CR2010-047, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## O P I N I O N

A jury convicted appellant Bill Boyd Kuhn of one count of the offense of continuous sexual abuse of a young child and twelve counts of the offense of indecency with a child. *See* Tex. Penal Code Ann. §§ 21.02, 21.11(a)(1) (West 2011). Punishment was assessed at life imprisonment for the continuous-sexual-abuse offense and twenty years' imprisonment for each count of the indecency offense, with the sentences to run concurrently. In five points of error on appeal, Kuhn complains of various errors in the jury charge, asserts that defense counsel rendered ineffective assistance by failing to object to certain statements made by the prosecutor during closing arguments, and claims that there is a statutory bar to his convictions for the offense of indecency with a child. We will affirm the judgments of conviction.

**BACKGROUND**

In count one of the indictment, Kuhn was charged with committing two or more acts of sexual abuse against his biological daughter, M.K. The underlying acts of sexual abuse that Kuhn was alleged to have committed against his daughter were:

- intentionally or knowingly causing the penetration of the female sexual organ of M.K. with Kuhn's hands or fingers (aggravated sexual assault);

- intentionally or knowingly causing the penetration of the female sexual organ of M.K. with M.K.'s hands or fingers (aggravated sexual assault);

- engaging in sexual contact with M.K. by touching the genitals or parts of the genitals of M.K. with Kuhn's hands or fingers with the intent to arouse or gratify his sexual desire (indecency with a child);

- engaging in sexual contact with M.K. by touching the genitals or parts of the genitals of M.K. with M.K.'s hands or fingers with the intent to arouse or gratify his sexual desire (indecency with a child);

- engaging in sexual contact with M.K. by touching the genitals or parts of the genitals of M.K. with M.K.'s hands or fingers with the intent to arouse or gratify M.K.'s sexual desire (indecency with a child).

In counts two through thirteen of the indictment, Kuhn was charged with committing the offense of indecency with a child by contact on or about the first day of each month from January through December 2009. Specifically, in each count, Kuhn was charged with touching M.K.'s breasts with his hands.

M.K., who was twelve years old at the time of trial, testified during trial that Kuhn had touched her breasts, her "backside," and her "private parts" on multiple occasions "as long as [she could] remember" and "pretty much all [her] life." In addition to M.K.'s testimony, the jury also considered Kuhn's videotaped statement to Detective Wayne Lehman of the Comal County

2

Sheriff's Office. In the statement, a copy of which was transcribed and admitted into evidence, Kuhn admitted to committing some of the alleged acts but denied others.[1] Three witnesses testified for the defense, each of whom claimed that they did not believe Kuhn was capable of committing the acts of which he had been accused. The jury found Kuhn guilty of all counts as charged. Punishment was before the district court, and the district court assessed punishment as noted above. This appeal followed.

## ANALYSIS

**Charge error**

In his first three points of error, Kuhn complains of various errors in the jury charge. We review claims of jury charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Swearingen*, 270 S.W.3d at 808. If error exists, we then evaluate the harm caused by the error. *Ngo*, 175 S.W.3d at 743; *Swearingen*, 270 S.W.3d at 808. The degree of harm required for reversal depends on whether that error was preserved in the trial court. When error is preserved in the trial court by timely objection, the record must show only "some harm." *Almanza*, 686 S.W.2d at 171; *Swearingen*, 270 S.W.3d at 808. By contrast, unobjected-to charge error requires reversal only if it resulted in "egregious harm." *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

---

[1] We discuss M.K.'s testimony and Kuhn's statement in more detail below as they are relevant to Kuhn's points of error.

3

*Acts predating the continuous-sexual-abuse statute*

The offense of continuous sexual abuse of a young child became effective on September 1, 2007, and the statute does not apply to acts of sexual abuse committed before that date. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148. In his first point of error, Kuhn contends that the jury charge was erroneous in potentially allowing jurors to convict him of that offense based on acts that he had committed prior to September 1, 2007. Specifically, in the abstract portion of the charge, the jury was instructed as follows:

> The State is not bound by the specific date in the indictment that the offense is alleged to have been committed. A conviction may be had upon proof that the offense, if any, was committed at any time prior to the filing of the indictment that is within the period of limitations. The indictment in the instant case was filed on February 3, 2010. There is no period of limitations for the offenses [sic] of Continuous Sexual Abuse of a Child.

In a previous case, this Court found a similar instruction to be erroneous. *See Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet. ref'd). At oral argument, the State essentially conceded that the charge in this case was erroneous for the reasons stated in *Martin*. *See* 335 S.W.3d at 875-76. Consequently, our disposition of Kuhn's complaint turns on whether harm exists.

Kuhn did not object to the form of the charge, so we apply the "egregious harm" standard—reversal is required only if the charge error was "so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza*, 686 S.W.2d at 171). "In determining whether [a]ppellant was deprived of a fair and impartial trial, we review 'the entire jury charge, the state of the evidence,

4

including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (quoting *Almanza*, 686 S.W.2d at 171). "We will examine 'any . . . part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused.'" *Id*. at 489-90. "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Id*. at 490. "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

### The evidence

Without evidence that Kuhn committed two or more acts of sexual abuse during a period that is thirty or more days in duration, and without evidence that those acts occurred after September 1, 2007, Kuhn could not validly be convicted of the offense of continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02. Kuhn contends that the state of the evidence was such that there was no way for the jury to differentiate between the acts of abuse that Kuhn allegedly committed before the effective date of the statute and the acts of abuse that he committed after the effective date of the statute. Essentially, Kuhn contends that the evidence is insufficient to permit the jury to rationally infer that Kuhn had committed two or more of his acts of sexual abuse during a period of thirty days or more and after September 1, 2007.

However, when considering all of the evidence in its totality and in the light most favorable to the verdict, the jury could have reasonably inferred that Kuhn committed at least two acts of abuse after September 1, 2007. Kuhn was interrogated on December 30, 2009. During

the interrogation, Kuhn told Detective Lehman that his daughter "started developing a year ago." From this evidence, the jury could have reasonably inferred that M.K. "started developing" in or around December 2008. The jury could have further inferred that December 2008 was the point at which Kuhn, according to what he had told Lehman, believed he should have stopped engaging in certain behaviors that Kuhn characterized as "checking" on his daughter, but did not stop. These behaviors included looking at his daughter while she was showering "to make sure that she's okay." Kuhn described this behavior as follows:

[Lehman]:    How do you check her?

[Kuhn]:    But—visually.

[Lehman]:    Okay.

. . . .

[Kuhn]:    But not—I didn't examine her. I didn't throw her on a table and flip her over and—you know, it's not like that. I just made sure that she's not hurt and she's well.

[Lehman]:    All right.

. . . .

[Kuhn]:    You know, it has nothing to do with sex, you know. And like I said, you know, it—I realize now that I probably should have drawn a line on dirt a long time before now, from talking to my sister. That I should have drawn that line and instead of saying her period, what I should have said is when she started puberty.

[Lehman]:    A period is a period. I mean, you can call it what you want to. I mean, it—but, you know—and I mean talking—

[Kuhn]:    No. See, my point is—

[Lehman]:    Uh-huh.

6

[Kuhn]:        —is that she started developing a year ago.

[Lehman]:      Okay.

[Kuhn]:        And I should have drawn a line in the dirt back then. Not put—put the line in the dirt here, when it should have been here, (indicating).

. . . .

[Lehman]:      Okay.

[Kuhn]:        You know, I just figured, "Well, you know, her period is her period and this is going to be a breakoff point." From talking to Sis, the breakoff point should have been over here, (indicating), you know. It should have been over here, (indicating).

[Lehman]:      Okay.

[Kuhn]:        When she started developing.

Also during the interview, Kuhn told Lehman that his daughter had "just started" her period recently, and he claimed that this was the point at which he had stopped his behavior. Thus, the jury could have reasonably inferred from Kuhn's statements that whatever behavior Kuhn had engaged in, it had continued after December 2008, when M.K. had "started developing," and lasted at least until M.K. had started her period, which, the jury could have reasonably inferred from Kuhn's statements, had occurred in late 2009.

Kuhn also provided statements regarding the specific behaviors in which he had engaged. These behaviors included an incident in which, he claimed, he had taught his daughter how to masturbate, and an incident in which he had rubbed baby oil on her breasts.[2] According to Kuhn,

---

[2] Under section 21.02, the incident involving M.K.'s breasts is not considered an act of sexual abuse for the purpose of the continuous-sexual-abuse statute. *See* Tex. Penal Code Ann. § 21.02(c)(2) (West 2011). However, the jury could consider this incident as circumstantial evidence

the incident with M.K.'s breasts occurred approximately "six-to-eight months, a year" prior to the masturbation incident.[3] Kuhn told Lehman that he would rub oil on M.K.'s breasts while they were "just sitting on the couch watching T.V." or "standing up in a bathroom in front of the mirror" after M.K. would "get out of the shower." Kuhn also described the masturbation incident in detail, claiming that it occurred "over a period of like three weeks of [M.K.] being relentless" in asking Kuhn to explain masturbation to her. According to Kuhn, he "put baby oil on her hand" (which, Kuhn claimed, M.K. "used to love" have "rubbed on her back . . . from when she was little bitty"), take her hand, and then rub her hand on her genitals. Kuhn claimed that he was "trying to keep my little girl from hurting herself." Kuhn also admitted that when he and M.K. were sitting together on the couch watching television, he would sometimes "rub her little back," "rub her little butt," and "rub her leg." Kuhn described this behavior as "petting" his daughter.

Although Kuhn did not provide specific dates regarding any of the above incidents, the jury could have reasonably inferred that these and other incidents had occurred after September 1, 2007, based in part on M.K.'s testimony during trial. During the trial, which occurred in October 2010, M.K. testified that she was born on July 6, 1998, that she was twelve years old, and that she was currently in the seventh grade. She also testified that last year, she was in the sixth grade. Based on the date of the trial, the jury could have reasonably inferred that M.K. was in the sixth grade during the late summer and fall of 2009, which was, according to Kuhn's statements, around the same time that M.K. started having her period.

---

that Kuhn had, after September 1, 2007, engaged in other conduct that could form the basis for his conviction. *See Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet. ref'd).

[3] Assuming that the masturbation incident occurred at some point in 2009, which the evidence suggests that it did, this would mean that the breast-rubbing incident, if it occurred when Kuhn said it did, occurred at some point after September 1, 2007.

8

M.K. testified that around the time when she was in the sixth grade, her best friends were S., B., and C., three girls who were approximately her age (although M.K. testified that C. was younger than her, "somewhere between nine or eleven" years old). According to M.K., these friends would often come over to her father's house and spend the night there. M.K. testified that she and her friends would also go swimming in the river on many occasions and that, when they returned to her father's house, they would sometimes take showers together. On more than one occasion, M.K. testified, her father would "peek inside" the shower curtain and look at them. It was after one such shower, M.K. explained, that her father "started teaching" her "how to masturbate." According to M.K., Kuhn first told her to take off her clothes, and then he "started touching [her]" on her "private parts" with his hand. When asked if Kuhn had anything on his hand at the time, M.K. testified that "he put Vasoline on." M.K. also testified that her sixth-grade friends were present when this incident had occurred.[4]

The other incidents of abuse that M.K. described were not associated with specific dates. However, M.K. testified that they occurred more than ten times, and that they occurred in both her father's bedroom while he was making her sleep in his bed with him and in the living room on the couch while they were watching television together. According to M.K., these incidents involved Kuhn touching her breasts and her "private parts" with his hands on numerous occasions.[5]

---

[4] On cross-examination, M.K. testified that she was friends with two of the girls for "about a year," and with the younger girl for "more than two years." Thus, although the exact date when this incident occurred was not specified, because all three of M.K.'s friends were present at the time it occurred, the jury could have reasonably inferred that this particular incident must have occurred after September 1, 2007.

[5] M.K. also testified that Kuhn had touched her private parts with his mouth. According to M.K., this happened "more than once. Sometimes in the summers. Sometimes the end of school. It just happened all sorts of times." This was uncharged conduct that could not form the basis for Kuhn's conviction for the offense of continuous sexual abuse of a child. Again, however, similar

M.K. testified that the incidents occurred "pretty much all [her] life" and "as long as [she] can remember." The jury could have reasonably inferred that at least some of the above incidents occurred after September 1, 2007, based on Kuhn's detailed statements to Lehman regarding his behavior combined with M.K.'s testimony relating to her period and how the abuse had occurred "before" she got her period:

Q.    Do you remember when you got your period?

A.    I know it was last year. I don't know exactly when.

Q.    Okay. [M.K.], did your dad ever touch your private parts before your period?

A.    Yes.

Q.    Did he ever touch your breasts before you got your period?

A.    Yes.

Q.    Did he ever touch your backside before you got your period?

A.    Yes.

Q.    Was it one time or more than one time?

A.    More than once. We're talking about like a time period before or right before?

Q.    How about describe to me how long—

A.    I'm not sure, but I was talking about a time period before.

---

to the breast-rubbing incident discussed above, the jury could consider this conduct as circumstantial evidence that Kuhn had engaged in other conduct that could form the basis for his conviction. *See Martin*, 335 S.W.3d at 867.

Although M.K. did not provide specific date references in her testimony, based on Kuhn's statements that he had continued "checking" on his daughter in the shower after she had "started developing," and also based on M.K.'s testimony that her father had taught her to masturbate in the presence of her sixth-grade friends, the jury could have reasonably inferred that M.K. was referring in her testimony to events that occurred before she got her period in 2009 but after she had "started developing" in December 2008. Accordingly, the jury could have reasonably inferred from the totality of all the evidence in this case, both direct and circumstantial, that Kuhn had committed two or more acts of abuse during a period that was 30 days or more in duration, and that those acts occurred after September 1, 2007.

We also observe that the specific issue relevant to the charge error in this case, i.e., whether the abuse had occurred before or after September 1, 2007, was not a heavily contested issue during trial.[6] Kuhn's defensive theory at trial was not that some of the abuse had occurred prior to the effective date of the statute and thus could not form the basis for his conviction. Rather, Kuhn denied that he had committed any of the charged offenses, including the continuous-sexual-abuse-of-a-child offense, because he lacked the requisite intent and because M.K. was either lying or had been manipulated by others. If Kuhn had contested the issue of whether the abuse had occurred before or after the effective date of the statute, perhaps the State would have spent more time developing M.K.'s testimony regarding the specific dates when the abuse had occurred. But the record reflects that Kuhn focused his defense not on the timing of the incidents but on attacking the

_____

[6] In a motion for directed verdict that Kuhn urged after the State had rested its case, Kuhn briefly asserted that the State failed to show "when things happened" for purposes of the continuous-sexual-abuse statute. However, Kuhn did not elaborate further on this point, the district court denied the motion, and, in Kuhn's closing argument, he did not address the timing issue. Nor did he address the timing issue in his opening statement.

11

credibility of the victim. The fact that the timing issue did not "vitally affect a defensive theory" also weighs against a finding of egregious harm. *See Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985); *see also Williams v. State*, 851 S.W.2d 282, 289 (Tex. Crim. App. 1993) (no egregious harm where charge error affected issue that "was not a hotly-contested issue at trial" and thus "had minimal impact on appellant's trial").

Finally on this point, we observe that the weight of the probative evidence in this case is substantial. M.K. testified to numerous acts of sexual misconduct that Kuhn had committed against her throughout the course of her life, and Kuhn admitted to committing at least one such criminal act (the masturbation incident) and also admitted to other conduct (the breast-rubbing incident) that, although not considered criminal under section 21.02, is considered criminal under another statute, *see* Tex. Penal Code Ann. § 21.11, and is, at the very least, circumstantial evidence that Kuhn had engaged in other conduct that was criminal under the statute. *See Martin*, 335 S.W.3d at 876. While some of the events that M.K. described likely occurred before September 1, 2007, we cannot conclude on this record that the jury would be unable to infer that at least two acts of abuse occurred after that date simply because the State did not elicit more detailed testimony from the child victim. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) ("[W]e cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults."); *Newby v. State*, 252 S.W.3d 431, 436 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("Courts give wide latitude to testimony given by child victims of sexual abuse."); *see also Williams v. State*, 305 S.W.3d 886, 890 & n.7 (Tex. App.—Texarkana 2010, no pet.) (suggesting that inability of child victims of abuse to articulate specific times when abuse occurred is "[a]rguably . . . precisely the kind of situation the Legislature considered when enacting

Section 21.02 of the Texas Penal Code"). The state of the evidence in this case weighs heavily against a finding that Kuhn was denied a fair and impartial trial.

*The entirety of the jury charge*

The first paragraph of the jury charge correctly instructed the jury that

> The Defendant, BILL BOYD KUHN, stands charged by Count 1 of the indictment in Cause No. CR2010-047, with the offense of Continuous Sexual Abuse of a Young Child, alleged to have been committed on or about the 1st day of September, 2007, through on or about the 16th day of December, 2009, in Comal County, Texas.

Thus, the opening paragraph in the charge expressly reminded the jury of the relevant time period in the case. Moreover, the erroneous abstract portion of the charge was immediately followed by an application paragraph that correctly instructed the jury that in order to convict Kuhn, the jury must find beyond a reasonable doubt that Kuhn, "on or about the 1st day of September, 2007, through on or about the 16th day of December, 2009, in the County of Comal and State of Texas, did then and there, during a period that was 30 days or more in duration, commit two or more acts of sexual abuse against [M.K.]." The application paragraph is that portion of the charge which authorizes the jury to act. *Hutch*, 922 S.W.2d at 172 (citing *Jones v. State*, 815 S.W.2d 667, 669 (Tex. Crim. App. 1991)). In different contexts, Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious. *See, e.g.*, *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Patrick v. State*, 906 S.W.2d 481, 492-93 (Tex. Crim. App. 1995); *Hughes v. State*, 897 S.W.2d 285, 296-97 (Tex. Crim. App. 1994); *Toler v. State*, 546 S.W.2d 290, 293-94 (Tex. Crim. App. 1977); *Bazanes v. State*,

13

310 S.W.3d 32, 39 (Tex. App.—Fort Worth 2010, pet. ref'd); *Williams v. State*, 226 S.W.3d 611, 618 (Tex. App.—Houston [1st Dist.] 2007, no pet.). While the application paragraph does not make the abstract portion of the charge any less erroneous, *see Martin*, 335 S.W.3d at 874, on the facts of this case, the correct statement of the law in the application paragraph mitigates against a finding of egregious harm.

Additionally, the district court included a detailed limiting instruction in the jury charge. The instruction informed the jury that the State had introduced evidence of other offenses or bad acts committed by Kuhn other than the offense charged in the indictment and that the jury could consider such evidence only for the purpose of aiding it in determining whether Kuhn, "on or about the 1st day of September, 2007, through on or about the 16th day of December, 2009, in Comal County, Texas, did then and there during a period that was 30 days or more in duration, commit two or more acts of sexual abuse against [M.K.]." This instruction reduced the risk that the jury would use any uncharged acts of abuse that occurred prior to September 1, 2007, to convict Kuhn of the charged offense. Thus, the limiting instruction in the charge weighs against a finding that Kuhn was denied a fair and impartial trial.

*Arguments of counsel and other relevant information*

During its closing argument, the State explained to the jury the specific requirements for convicting Kuhn under the continuous-sexual-abuse statute:

> A fairly new law is what they call continuous sexual abuse of a child. It was put into the law September 1st, 19—or 2007. That's why those dates are actually used in the indictment. That's when that law went into effect and that's why that's the date I picked. That law didn't exist before that time.

14

> And basically what they said—they made it a little different, but it says if we can show that you committed two acts of sexual abuse against a child younger than 14 years of age and the period is over 30 days—so you have to have kind of an ongoing sexual abuse of a child for a period over 30 days, then that is continuous sexual abuse of a young child.

This argument correctly informed the jury that the law "went into effect" on September 1, 2007, that the law "didn't exist before that time," and that this was the reason why "those dates are actually used in the indictment." Thus, this argument directed the jury's attention to the effective date of the statute and reminded the jury of the significance of the dates alleged in the indictment.

Later, the State also argued the following:

> That's the application period—paragraph, (indicating). There's no question that this took place between September 1st of 2007. Yes, it took place before then, but you know what? He's getting a break and that's okay. But it is sure clear that more than two times he sexually abused his daughter between September 1, 2007 and between December 16th, 2009.

This argument drew the jury's attention specifically to the application paragraph of the charge—which contained a correct statement of the law applicable to the case—and reminded the jury of the specific dates between which it must find that Kuhn committed two or more acts of sexual abuse. Thus, the State's closing argument weighs against a finding of egregious harm.

Additionally, at the beginning of trial, the State read the indictment to the jury, and the indictment, similar to the application paragraph, contained a correct recitation of the law applicable to the case. At that time, the jury was informed that Kuhn was charged with committing, "on or about the 1st day of September 1, 2007, through on or about the 16th day of December 2009, during a period that was 30 days or more in duration . . . two or more acts of sexual abuse against

15

[M.K.]." Thus, before the parties presented their opening arguments, the jury was made aware of the relevant time period in the case.

On the other hand, throughout the course of the trial, including during opening and closing arguments, the State emphasized the long-term nature of the sexual abuse and did not draw a distinction between the acts of abuse that occurred before the effective date of the statute and the acts of abuse that occurred after the effective date of the statute. Thus, this weighs in favor of a finding of harm. However, because the abuse that occurred prior to the effective date of the statute could permissibly be considered by the jury as circumstantial evidence of the abuse that occurred after the effective date of the statute, *see Martin*, 335 S.W.3d at 876, and because the jury charge contained a limiting instruction prohibiting the jury from considering the uncharged abuse for impermissible purposes, this factor does not weigh heavily in favor of such a finding.

*Conclusion regarding harm*

Considering the above factors in their totality, particularly the state of the evidence in this case, we cannot conclude that the charge error in this case deprived Kuhn of a fair and impartial trial. We overrule Kuhn's first point of error.

**Predicate acts of abuse**

In his second point of error, Kuhn contends that the court's charge authorized a conviction for the continuous-sexual-abuse offense based on predicate acts of abuse which, according to Kuhn, could not constitute the underlying offenses of aggravated sexual assault or indecency with a child. Specifically, Kuhn asserts that the allegation that he had intentionally or knowingly caused the penetration of the female sexual organ of M.K. using M.K.'s hands or fingers

16

could not form the basis for an aggravated-sexual-assault conviction, and that the allegations that he had engaged in sexual contact with M.K. by touching M.K.'s genitals using M.K.'s hands or fingers to gratify M.K.'s sexual desire could not form the basis for an indecency-with-a-child conviction. In other words, in Kuhn's view, he could not validly be convicted based on allegations that M.K. had penetrated or gratified herself, and the charge was erroneous in allowing the jury to convict him on such a theory.

We disagree. The predicate acts of sexual abuse under the continuous-sexual-abuse statute include the offenses of aggravated sexual assault of a child and indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.02(c)(2), (3). These predicate offenses, as defined in the penal code, encompass the conduct charged in this case. A person commits the offense of aggravated sexual assault if he intentionally or knowingly "causes the penetration of the anus or sexual organ of a child *by any means*." *Id*. § 22.021(a)(1)(B)(i) (West Supp. 2012) (emphasis added). We are aware of no authority, and Kuhn cites to none, holding that the conduct element of this offense cannot include using the child's own hands or fingers to cause the penetration. Accordingly, Kuhn could validly be convicted of the predicate offense of aggravated sexual assault based on evidence that he had caused the penetration of M.K.'s sexual organ by using M.K.'s own hands or fingers, and the charge was not erroneous in authorizing the jury to convict him on such a theory.

Similarly, a person commits the offense of indecency with a child if he "engages in sexual contact with the child or *causes the child to engage in sexual contact*." *Id*. § 21.11(a)(1) (emphasis added). "Sexual contact" means "*any touching* by a person . . . of . . . any part of the genitals of a child," "if committed with the intent to arouse or gratify the sexual desire of

17

*any person*." *Id*. (emphasis added). Thus, by the plain terms of the statute, Kuhn could validly be convicted of the offense of indecency with a child by contact based on evidence that he had caused M.K. to touch her own genitals with the intent to arouse or gratify either his own sexual desire or M.K.'s sexual desire, and the charge was not erroneous in authorizing the jury to convict him on such a theory. We overrule Kuhn's second point of error.

### *"Medical care"*

During the charge conference, Kuhn requested an instruction on the defense of medical care. *See id*. § 22.011(d) (West 2011); § 22.021(d). The district court denied the request. In his third point of error, Kuhn asserts that he was entitled to the instruction and that the district court erred by not including it in the charge.

"It is well settled that a defendant has a right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence." *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006) (citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999)); *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (op. on reh'g). "This rule is designed to ensure that the jury, not the judge, decides the credibility of the evidence." *Miller*, 815 S.W.2d at 585; *see also Woodfox v. State*, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987) ("When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury.").

However, "[t]he issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." Tex. Penal Code Ann. § 2.03(c) (West 2011).

Therefore, if the evidence, when viewed in the light most favorable to the defendant, does not establish the defense, the defendant is not entitled to an instruction on the issue. *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Granger*, 3 S.W.3d at 38; *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984). "[T]he evidence must be such that it will support a rational jury finding as to each element of the defense." *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007). In determining whether a defense is supported by the evidence, "a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Id*.

It is a defense to prosecution for the offense of aggravated sexual assault of a child that the offending conduct "consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party." Tex. Penal Code Ann. §§ 22.011(d); 22.021(d). Kuhn asserts that the defense of medical care was raised by various statements he had made to Detective Lehman explaining how M.K.'s genitals were "raw" from what Kuhn claimed to be excessive masturbation and describing how he had taught M.K. to masturbate so that she would not continue to "hurt herself." Specifically, the following statements were made:

> [Lehman]: When—let me—let me go backwards just a little bit on the masturbation issue. Did she ever talk to you or tell you that she had been masturbating?
>
> [Kuhn]: Oh, yeah.
>
> [Lehman]: Okay.
>
> [Kuhn]: That's what I'm saying. She's relentless.
>
> [Lehman]: Okay.

19

[Kuhn]: You know, she would come and her little polly would just be raw.

[Lehman]: What's a polly?

[Kuhn]: Her—her privates.

[Lehman]: Okay.

[Kuhn]: Her vagina—

[Lehman]: All right.

[Kuhn]: —would just be raw.

[Lehman]: Okay.

[Kuhn]: And I said, "[M.K.], it's not a tom-tom. You don't beat on it. You know what? What"—you know. So, I mean, that's what I'm saying. It's just a progression of just—she just didn't let that one go.

[Lehman]: Okay. Well, when you say it was beat up, what did you tell her? I mean, did you direct her or show her how—

[Kuhn]: Yeah.

[Lehman]: —to do it differently? Or—

[Kuhn]: Yeah, I told her. I mean, that's what started the whole big thing, I'm sure. I said, "[M.K], it's—you know, it's not a tom-tom. You don't beat on it and you don't, you know—you—you're being too rough."

[Lehman]: How did she correct it or did she?

[Kuhn]: Well, I introduced her to—to baby—baby oil.

[Lehman]: Okay.

[Kuhn]: "Baby, put some baby oil on your fingers. You know, don't—it's not a tom—don't be so damn rough. I mean, you know, it's not a tom-tom," you know.

. . . .

20

[Lehman]:      Well, when you introduced her to baby oil, how did you introduce her to baby oil? Tell me about that.

[Kuhn]:        I put baby oil on her hand.

. . . .

[Lehman]:      Did you tell her where to touch—

[Kuhn]:        Yeah—no.

[Lehman]:      —or did you show her where to touch?

[Kuhn]:        You know what? Yes.

[Lehman]:      "Yes" what?

[Kuhn]:        Yes, to both questions.

[Lehman]:      Okay.

[Kuhn]:        I took her little hand and I put it on her. I said, "Baby, here. Don't be rough. Look at—you're raw. You're hurting yourself"—

[Lehman]:      Okay.

[Kuhn]:        —you know. It was not sexual. You need to understand, it was not—it had nothing to do with sex. It had to do with her hurting herself—

. . . .

[Lehman]:      When you put the baby oil on her hands or on her fingers, did you—you showed her where to touch. Did you actually touch her or did you just tell her to put her hand there or what? How—tell me what she—what happened.

[Kuhn]:        Give me your hand.

               (Mr. Kuhn takes Detective Lehman's hand)

[Kuhn]:        I'm not going to do anything. (Indicating). I'm going to say, "[M.K.], right there. You don't beat on it. You don't bang on it."

21

| | |
|---|---|
| [Lehman]: | Okay. |
| [Kuhn]: | It's—it's tender. |
| [Lehman]: | Okay. |
| [Kuhn]: | You know, just don't. |
| [Lehman]: | All right. Where was "right there"? |
| [Kuhn]: | Her polly. On her little—on her little clit. |
| [Lehman]: | On her clit. Okay. All right. And what did she do when you showed her that? Did she understand? |
| [Kuhn]: | Uh-huh. |
| [Lehman]: | Okay. |
| [Kuhn]: | . . . . You know, you're just not there for the whole thing. And my frustration, you know. And now—I mean, at the time—I'm trying to keep my little girl from hurting herself. |

Later during the interview, Lehman returned to this subject and Kuhn made additional statements concerning his conduct:

| | |
|---|---|
| [Lehman]: | [Earlier,] you explained that you were rubbing her fingers or causing her fingers— |
| [Kuhn]: | Yes. Yes. |
| [Lehman]: | —to rub on her clitoris, the purpose of that was to teach her how to masturbate so that she wasn't harming herself. |
| [Kuhn]: | Right. |
| [Lehman]: | Okay. |
| [Kuhn]: | To teach her—it's not necessarily to teach her how to masturbate. You're—there again, you're out of context. The—the deal is to teach her not to hurt herself— |

22

[Lehman]:     Okay.

[Kuhn]:       —while—what you have—while she's masturbating.

[Lehman]:     Okay.

[Kuhn]:       Yes. Yes. In that context, yes. What you have to understand is that she's hurting herself.

[Lehman]:     Okay.

[Kuhn]:       And I don't want her to hurt herself. I can't stop this from happening. You know, you can't be in her room. You can't watch her 24 hours a day. You cannot control them. All you can do is guide them as best you can.

. . . .

[Lehman]:     Okay.

[Kuhn]:       —you know. And that's what you need to understand is that if you take something that I say and you take it out of context, you know—

[Lehman]:     But that's what we're talking about. I'm trying not to take it out of context.

[Kuhn]:       Well, don't. I mean, don't take this out of context. Don't twist this. Do I know it's wrong? Yes, now I know that it's wrong. In my mind, I justify it. I'm just doctoring her.

We must determine whether the above statements, when viewed in the light most favorable to the

defendant, would support a rational jury finding that Kuhn's conduct constituted "medical care."

The statute itself does not define the term "medical care." However, the court of

criminal appeals has recently construed the term and provided some guidance on the situations

in which it applies. *See Cornet v. State*, 359 S.W.3d 217 (Tex. Crim. App. 2012). In *Cornet*, the

defendant was charged with, among other things, digitally penetrating the genitals of his step-

daughter. *Id*. at 217-18. During Cornet's interview with the police, he essentially admitted to

23

penetrating his stepdaughter on one occasion, but he claimed that he had done so only because he suspected that his stepdaughter was a victim of sexual abuse by her brothers and thus wanted to examine her for "any physical evidence of sexual contact or injury." *Id*. at 218-19. During the charge conference, Cornet requested that the jury be instructed on the medical-care defense, and the trial court denied the request. *Id*. at 219-20. The intermediate appeals court agreed that Cornet was not entitled to the instruction because, among other reasons, it did not believe the defense was meant to apply to situations in which a parent suspects sexual abuse and proceeds to examine the child's genitals "without any medical education, training, or experience." *Id*. at 220.

The court of criminal appeals disagreed. A majority of the court held that the availability of the defense does not turn upon "the accused's familiarity with the science of medicine" and thus can be claimed by individuals who are not medical professionals. *Id*. at 221-22. The court explained that "[t]he text of the statute makes it abundantly clear that it is the nature of the 'conduct,' not the occupation of the actor, that characterizes the availability of the defense" and that "the defense should apply to all persons, health-care professional or not, who can otherwise validly claim the defense based on their conduct." *Id*. at 222.

Additionally, a plurality of the court addressed "the question of whether the defense is available when the penetrative conduct consisted of a 'mere' medical inspection." *Id*. at 222. The plurality, construing the meaning of the term "medical care," concluded that it did. The plurality defined the modifier "medical" as "of, relating to, or concerned with physicians or the practice of medicine" and further defined "medicine" as "the science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease." *Id*. at 222-23 (quoting Webster's Third New International Dictionary 1402 (2002)). Based on these definitions, the plurality reasoned

24

that "if indeed the Legislature intended to include examinations as protected conduct under the defense, there is a strong inference, from the Legislature's inclusion of the word 'medical,' that the Legislature sought only to protect examinations insofar as they are medically relevant—that is, relevant to the state of the child's health and well-being." *Id*. at 223.

The plurality then went on to consider the meaning of the term "care," noting that "we must be cautious" in limiting the term's meaning "to definitions of the word that make sense in the context of the phrase '*medical* care.'" *Id*. at 223. "To that end," the plurality defined "care" as "CHARGE, SUPERVISION, MANAGEMENT: responsibility for or attention to safety and well-being <under a doctor's ~>[.]" *Id*. (quoting Webster's Third New International Dictionary 338). The plurality then concluded that "even the simple inspection of a child's anatomy, if conducted for medical purposes, is consistent with the 'responsibility for or attention to the safety and well-being' of that child." *Id*. The plurality explained:

> Surely the Legislature meant for the medical-care defense to immunize from prosecution medically trained professionals who examine victims of child sexual assault for *medically motivated* purposes. A parent or other person in loco parentis ordinarily assumes at least as great a responsibility for the safety and medical well-being of his child. We think it would dishonor the legislative intent, expressed in its very choice of words, to construe the phrase "medical care" so rigidly as to exclude inspections, whether conducted by trained medical personnel, by a parent, or by another adult acting in loco parentis, when those inspections are undertaken for the *medical benefit* of the child.

*Id*. (emphasis added). The plurality also rejected the State's contention that the defense should be limited to "medical treatment." *Id*. If the Legislature had intended such a limitation, the plurality reasoned, "it would have expressly adopted the language of 'medical treatment,'" which the Legislature had used elsewhere in the penal code. *Id*.

Having determined that the medical-care defense applied to a parent's medical inspection of a child's genitals, the plurality went on to find that the evidence presented at trial raised this defense. *Id*. at 223-24. The plurality explained that in his written statement, the defendant claimed that he had examined the child "'to see if she had any physical evidence of sexual contact or injury,' and that the examination came to a halt once he 'determined there was nothing wrong with the child.'" *Id*. at 224. Also in his statement, the defendant indicated "that he had good reason to suspect that the child had been abused before," which, the plurality reasoned, made "an examination of the area all the more likely to turn up signs of abuse." *Id*. Additionally, at trial, the defendant testified that in conducting his examination of the child's genitals, he "wanted to find out that she was okay," and that he "just wanted to take a look to see if there was any swelling, any scarring, any indication externally that she had been injured." *Id*. The plurality concluded that "[t]his evidence, if believed by the jury, would support a rational inference that the appellant's touching of the child was, in fact, an inspection for a medically relevant purpose." *Id*.

The plurality further concluded that the doctrine of confession and avoidance applied to the medical-care defense. *Id*. at 224. "A defense subject to the doctrine of confession and avoidance is one in which 'a defendant admits allegations but pleads additional facts that deprive the admitted facts of an adverse legal effect.'" *Id*. (quoting Black's Law Dictionary 339 (9th ed. 2009)). The plurality found that the defendant, in his statements, sufficiently admitted to penetrating his step-daughter's sex organ in order to entitle him to the defense. *Id*. at 226-28.

In this case, we similarly find that Kuhn, in his statements, admitted to penetrating M.K.'s genitals. Specifically, he admitted to causing M.K.'s hand to touch her sex organ in order to teach her how not to hurt herself while masturbating. Such touching constitutes penetration. *See*

26

*id*.; *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). Thus, Kuhn's admission would entitle him to the medical-care instruction *if* a jury could rationally infer from the evidence that his admitted conduct constitutes "medical care" as the Legislature used the term in the statute.

However, even when viewed in the light most favorable to the defendant, we cannot conclude that the evidence in this case would support a rational jury finding that Kuhn's conduct constituted "medical care." Unlike in *Cornet*, Kuhn made no statements tending to show that he was examining or inspecting his daughter's genitals in order to determine if she had been abused or injured. Although Kuhn repeatedly stated that he had observed M.K.'s genitals to be "raw," he made no statements tending to show that his conduct was for the purpose of diagnosing the cause of, ascertaining the extent of, treating, or otherwise examining the rawness for signs of injury, disease, or abuse. Instead, Kuhn claimed that he was teaching M.K. how to masturbate properly so that she might not hurt herself in the future. And, despite Kuhn's claim that he was "doctoring" M.K., he presented no evidence tending to show that teaching his daughter how to masturbate was for a medically relevant purpose. Rather, Kuhn acknowledged in his statement that the purpose of masturbation was "to please yourself" and to "self-gratify." Whatever conduct "medical care" might encompass in other contexts, we cannot conclude that the Legislature conceivably could have intended to encompass coaching a child regarding masturbation techniques. *See Cornet*, 359 S.W.3d at 223 (reasoning that Legislature sought only to protect conduct that is "medically" relevant to child's health and well-being and conduct that confers "medical" benefit on child). To hold otherwise would imply a range of absurd consequences that the Legislature could not possibly have intended. For example, a father could admit to digitally penetrating his daughter's sex organ but be entitled to the medical-care instruction if he claimed that he did so to teach his daughter

27

about a "safe" method of having sexual intercourse that would prevent her from becoming pregnant or contracting sexually transmitted diseases. Accordingly, the district court did not err in denying Kuhn's request for the instruction. *See Burleson v. State*, 791 S.W.2d 334, 338-39 (Tex. App.—Austin 1990), *pet. dism'd, improvidently granted*, 819 S.W.2d 537 (Tex. Crim. App. 1991) (concluding that defendant was not entitled to medical-care instruction when defendant admitted that he had committed sex acts with child in order to satisfy child's "abnormal interest in sex," but there was no evidence tending to show that defendant thought he was providing medical care to child); *see also Lynch v. State*, 952 S.W.2d 594, 598 (Tex. App.—Beaumont 1997, no pet.) (adopting "a fact specific case-by-case approach" in determining what constitutes "medical care" and concluding on facts of that case that defendant's penetration of child's sex organ was not performed for medical purposes); *cf. Cornet*, 359 S.W.3d at 230 (Cochran, J., dissenting) ("[B]efore appellant would be entitled to an instruction on the 'medical care' defense, the trial court, and any reviewing court, must conclude that, if the defendant's version of events is believed, he is entitled to an acquittal."). We overrule Kuhn's third point of error.

**Ineffective assistance of counsel**

In his fourth point of error, Kuhn asserts that he was denied the effective assistance of counsel at trial. Specifically, he contends that counsel was ineffective in failing to object to seven instances of what Kuhn characterizes as improper jury argument by the State.

To establish that he received ineffective assistance of counsel, Kuhn must prove by a preponderance of the evidence that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*,

466 U.S. 668, 687-88 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prove deficient performance, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). "To satisfy this prong of the analysis, a defendant 'must show that counsel's representation fell below an objective standard of reasonableness' based upon 'prevailing professional norms.'" *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 688). "For this performance inquiry we consider all of the circumstances, with 'a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Id*. (quoting *Strickland*, 466 U.S. at 688-89).

If the defendant proves that counsel's performance was deficient, he must further demonstrate that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. Therefore, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, a defendant must show that there is a reasonable probability, meaning a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for the unprofessional errors of counsel. *Id*. at 687.

For a claim of ineffective assistance of counsel to succeed on appeal, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). An ineffective-assistance claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Id*. (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Id*. This statement is true with regard to the "deficient performance" prong of the inquiry, when counsel's reasons for failing to do something do not appear in the record. *Id*. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Id*. (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*. (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). In other words, in the absence of a record explaining the reasons for counsel's decisions, we will not find counsel's performance deficient if any reasonably sound strategic motivation can be imagined. *See Garcia*, 57 S.W.3d at 440.

Because Kuhn is arguing that counsel was ineffective in failing to object to improper jury argument, he must first show that the argument was in fact improper. If a jury argument is proper, counsel cannot be ineffective in failing to object to it.[7] *See Richards v. State*, 912 S.W.2d

---

[7] Proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to an argument of opposing counsel, and (4) pleas for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

374, 379 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). But even if an argument is improper, Kuhn must further show that (1) the failure to object to the improper argument constituted deficient performance; and (2) he was prejudiced by that failure. *Richards*, 912 S.W.2d at 379. We thus proceed to examine each of the allegedly improper statements made by the State during its argument and determine whether counsel's decision to not object to those statements rises to the level of ineffective assistance of counsel.

### *Prosecutor's comment on her opinion of the victim's truthfulness*

Kuhn first contends that the following statement improperly expressed the prosecutor's opinion of the victim's truthfulness:

> We talked a lot of time [sic] about every time he touched her on her private part. She told you that it happened so much that "I can't remember how many times." I believe her.

It is improper for the prosecutor to inject her opinion about the victim's honesty and truthfulness into closing arguments. *See Menefee v. State*, 614 S.W.2d 167 (Tex. Crim. App. 1981); *Sanders v. State*, 191 S.W.3d 272, 275 (Tex. App.—Waco 2006, pet. ref'd). Thus, it was improper for the prosecutor to state that she "believed" the victim. However, "the decision to object to particular statements uttered during closing argument is frequently a matter of legitimate trial strategy." *Evans v. State*, 60 S.W.3d 269, 273 (Tex. App.—Amarillo 2001, pet. ref'd) (citing *Hubbard v. State*, 770 S.W.2d 31, 45 (Tex. App.—Dallas 1989, pet. ref'd)). "Thus, evidence of counsel's strategy, if any, is crucial to determining whether he was ineffective" in failing to object to such a statement. *Id*. But here, there is no record of the reasons for counsel's decision. Accordingly, we will not find counsel's performance deficient if any reasonably sound strategic motivation can be imagined. *See Garcia*,

31

57 S.W.3d at 440. One such reasonably sound strategic motivation could have been the desire to avoid drawing additional attention to the prosecutor's opinion. After stating that she "believed" the victim, the prosecutor immediately moved on to other aspects of her argument. If, however, counsel had objected to the statement, the prosecutor would have stopped her argument at that point to respond to the objection, and the jury would have focused its attention on the statement. Thus, the decision not to object could have been strategically motivated, and without a record demonstrating otherwise, we cannot find that counsel's decision constitutes deficient performance. *Cf. Alberts v. State*, 302 S.W.3d 495, 506 n.7 (Tex. App.—Texarkana 2009, no pet.) (concluding that counsel's decision to withhold objection to testimony concerning victim's truthfulness may have been tactical decision to avoid calling jury's attention to objectionable testimony). Moreover, even assuming that counsel was deficient in failing to object to the statement, Kuhn has failed to show on this record that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. The prosecutor's statement was brief, was made in the middle of her closing argument, and was an isolated occurrence that was not repeated at any other point during the argument.

### Misstatements of law

Jury argument that misstates the law or that is contrary to the instructions in the jury charge is improper. *See Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); *Burke v. State*, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983); *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). "Defense counsel has a duty to correct misstatements of law that are detrimental to his client." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Kuhn contends that the following three statements made by the prosecutor either misstated the law or contravened the jury charge:

- The minute he stuck his hands, baby oil or no baby oil, on her private parts or her Polly as she likes to call it—at one point he refers to it as her clit. The minute he did that, he penetrated.

- You heard her words: "As long as I can remember. For my entire life." We met that element.

- You've taken an oath to follow the law. Don't add any elements that don't belong. I will submit to you there is a reason we don't have to prove that it was to arouse or gratify his sexual desires because there is no reason you're supposed to be touching a child or you're supposed to be penetrating a child's private parts.

For the reasons that follow, we find that none of the above statements, when viewed in their proper context, misstated the law or were contrary to the jury charge. *See Drew v. State*, 743 S.W.2d 207, 220 (Tex. Crim. App. 1987) (explaining that alleged misstatements "must be viewed in the context of the entire argument" and that "isolated sentences taken out of context may take on a meaning different from that understood by the jury"); *Railsback v. State*, 95 S.W.3d 473, 479 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("In reviewing complaints about comments made during jury argument, the appellate courts review the comments within the context of the entire argument.").

Kuhn asserts that the first statement was inaccurate because it equated touching a child's sex organ with penetrating a child's sex organ. However, touching can rise to the level of penetration if the touching involves "tactile contact beneath the fold of complainant's external genitalia" or "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view." *Cornet*, 359 S.W.3d at 226; *Vernon*, 841 S.W.2d at 409. Here, the jury

33

could reasonably infer from the evidence presented that Kuhn's touching rose to that level. Thus, rather than misstating the law, the prosecutor was merely making a reasonable deduction from the evidence. *See Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997) (during argument, parties are "allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable and offered in good faith").

Kuhn claims that the second statement, which referred to M.K.'s testimony that she had been abused for her "entire life," was improper because it allowed the jury to convict Kuhn based on conduct that occurred before the effective date of the statute. However, when considering the context in which the statement was made, it is apparent that the prosecutor was not arguing that the jury could convict Kuhn based on conduct that occurred before the effective date of the statute. Rather, the prosecutor was referring to the statutory requirement that the conduct occur "for a period of 30 or more days in duration" and arguing that the State had met that particular element of the offense through M.K.'s testimony that the abuse had been occurring for "as long as she could remember." *See* Tex. Penal Code Ann. § 21.02(b)(1). Thus, this was not a misstatement of the law but a reasonable deduction from the evidence.

Finally, Kuhn contends that the prosecutor, by arguing that the State did not have to prove that Kuhn's intent "was to arouse or gratify his sexual desires," misstated the elements of the offense of indecency with a child. If the prosecutor had actually been referring to the offense of indecency with a child, which does have such a requirement, *see id*. § 21.11(a)(2), this would have been a misstatement. However, when considering the context in which the statement was made, it is apparent that the prosecutor was instead referring to the offense of aggravated sexual assault of

34

a child.[8]  That offense does not include an element of intent to arouse or gratify one's sexual desire.

*See id*. § 22.021.  Accordingly, the prosecutor's comment was a correct statement of the law.

None of the above comments misstated the law or contravened the jury charge.

Accordingly, we cannot find counsel deficient for not objecting to them.

### *Outside the record*

A prosecutor may not use closing arguments to present evidence that is outside the

record.  *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011).  Thus, it is improper for

a prosecutor to refer "to facts that are neither in evidence nor inferable from the evidence."  *Id*.

(citing *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990)).  On the other hand, a prosecutor

is permitted "to draw from the facts in evidence all inferences which are reasonable, fair and

legitimate."  *Borjan*, 787 S.W.2d at 57.

Kuhn asserts that the following two statements constituted improper argument outside

the record:

- And, yes, we could have gone back and, yes, we could have reindicted this man and added in all of the other sick and disgusting ways that he molested his daughter.  But you know what?  This time we're going to end it.

- So please convict this man only of what he did and only of what we charged. We're not even talking about all of the other stuff.

Kuhn contends that these statements urged the jury to convict him on the basis of uncharged conduct.

---

[8] The statement was made immediately following the prosecutor's discussion of the element of penetration, which is an element of the underlying offense of aggravated sexual assault.  When the prosecutor discussed the offense of indecency with a child, she did explain the requirement that Kuhn must have an intent to arouse or gratify his sexual desire.

We disagree. Although the prosecutor refers to uncharged conduct in the above statements, at no point in her argument does the prosecutor urge the jury to convict Kuhn based on that conduct. In fact, in the second statement, the prosecutor explicitly asks the jury to convict Kuhn "only of what he did and only of what we charged." At another point during her argument, the prosecutor referred to the uncharged conduct and stated, "He's getting a break and that's okay." The prosecutor later added, when referring to the indecency-by-contact charges, "Even though she told you that it happened her whole life, we're asking you to hold him accountable for one year of touching her breasts. One year." Thus, the record reflects that the prosecutor argued on numerous occasions that the jury should not convict Kuhn based on the uncharged conduct. Moreover, the prosecutor was not arguing "outside the record" by referring to the uncharged conduct. On the contrary, the record contains extraneous-offense evidence which was admitted for certain permissible purposes, and at no point did the prosecutor argue to the jury that the extraneous-offense evidence should be considered for impermissible purposes. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West Supp. 2011); Tex. R. Evid. 404(b). Accordingly, it was not improper for the prosecutor to comment on the extraneous-offense evidence, and counsel was therefore not deficient in failing to object to the prosecutor's statements.

### Alleged comment on Kuhn's failure to testify

Finally, Kuhn asserts that the following statement was an improper comment on Kuhn's failure to testify:

> [T]here is no reason you're supposed [to] be touching a child or you're supposed [to] be penetrating a child's private parts. There is no reason and he didn't give you a reason, either.

36

A comment on a defendant's failure to testify violates both state and federal law. *See Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). "The test for determining whether prosecutorial argument is a comment on a defendant's failure to testify 'is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify.'" *Busby v. State*, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008) (quoting *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007)). "It is not sufficient that the language used might impliedly or indirectly be so construed." *Id*. Rather, "the implication that the State referred to the defendant's failure to testify must be a clear and necessary one." *Randolph*, 353 S.W.3d at 891 (citing *Bustamante v. State*, 48 S.W.3d 761, 767 (Tex. Crim. App. 2001)). "In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character." *Id*. We "must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument." *Id*.

Here, the prosecutor's comment was made immediately following the prosecutor's explanation of the requirements for proving the underlying offense of aggravated sexual assault of a child. During this explanation, the prosecutor had summarized the evidence tending to show that Kuhn had penetrated M.K., including Kuhn's admission that he had touched her sex organ. In this context, the prosecutor's comment that appellant had failed to provide a "reason" for his conduct could reasonably be construed as an argument that Kuhn's purported explanation—that he was teaching his daughter how to masturbate—was either not credible or was not a reasonable justification for his behavior. In other words, rather than commenting on Kuhn's failure to testify, the prosecutor could have been merely attacking the credibility of Kuhn's explanation for his

conduct. Because we are to resolve any ambiguities in the language in favor of it being a permissible argument, we cannot say that the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *See id*. at 891. Additionally, we observe that there may have been a strategic reason for not objecting to the statement. Counsel could have reasonably concluded that objecting to a brief and ambiguous remark concerning Kuhn's failure to reasonably explain his conduct might have drawn attention to the fact that Kuhn did not testify. Accordingly, we cannot say that counsel was deficient in not objecting to the comment.

### *Conclusion on ineffective-assistance claims*

On this record, we cannot conclude that any of counsel's decisions not to object to the prosecutor's comments constituted deficient performance. Nor can we conclude on this record that there is a reasonable probability that but for counsel's allegedly deficient performance, the result of the proceeding would have been different. Accordingly, Kuhn has failed to prove by a preponderance of the evidence that counsel was ineffective. We overrule Kuhn's fourth point of error.

## **"Statutory bar" to indecency convictions**

The continuous-sexual-abuse statute lists various underlying offenses that may form the basis for a defendant's conviction under the statute. *See* Tex. Penal Code Ann. § 21.02(c). A defendant may not be convicted in the same criminal action of an underlying offense that forms the basis for his conviction under the continuous-sexual-abuse statute. *See id*. § 21.02(e). In his fifth point of error, Kuhn asserts that he could not validly be convicted for the offense of indecency

with a child by contact because that offense formed the basis for his conviction under the continuous-sexual-abuse statute.

We disagree. Kuhn was alleged to have committed the offense of indecency with a child by touching M.K.'s breasts. Such conduct cannot form the basis for a conviction under the continuous-sexual-abuse statute, *see id*. § 21.02(c)(2), and, in this case, it did not. Rather, in the continuous-sexual-abuse charge, Kuhn was alleged to have committed the underlying offense of indecency with a child by contact by touching M.K.'s genitals. Indecency by touching a child's genitals and indecency by touching a child's breasts are separate offenses. *See Pizzo v. State*, 235 S.W.3d 711, 719 (Tex. Crim. App. 2007). Thus, the offense that formed the basis for Kuhn's conviction under the continuous-sexual-abuse statute was separate from the offense that formed the basis for his conviction under the indecency statute. Accordingly, there was no statutory bar to Kuhn's twelve convictions for the offense of indecency with a child by contact. We overrule Kuhn's fifth point of error.

## CONCLUSION

We affirm the judgments of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose
   Concurring and Dissenting Opinion by Chief Justice Jones

Affirmed

Filed: January 31, 2013

Publish