COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | | |
|---|---|---|---|
| JOHN VINCENT CRUZ, | § | | No. 08-13-00297-CR |
| | § | | |
| Appellant, | § | | Appeal from the |
| | § | | |
| v. | § | | 120th Judicial District Court |
| | § | | |
| THE STATE OF TEXAS, | § | | of El Paso County, Texas |
| | § | | |
| Appellee. | § | | (TC# 20120D00741) |
| | § | | |

## **O P I N I O N**

John Vincent Cruz appeals the trial court's judgment convicting him of two counts of indecency with a child by contact. In two issues, he contends that counsel was ineffective. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Cruz was employed as a hairdresser. In 2008, he befriended J.B.'s mother after cutting her and J.B.'s hair. The two soon became best friends, and Cruz eventually grew so close to her, her husband, J.B., and J.B.'s younger sister that they considered him a family member. Cruz lavished J.B. and J.B.'s sister with gifts and, on a few occasions, babysat and entertained them.

Cruz agreed to babysit J.B. and J.B.'s sister on the evening of November 25, 2011, while

J.B.'s mother attended night classes at a local college. She dropped the children off at approximately 5:00 p.m. at the home of Cruz's parents, where Cruz resided. Cruz's parents were home then but left soon afterwards to play bingo. When J.B.'s mother picked up the children at approximately 10:00 p.m., Cruz's parents had not returned home from bingo. She also noticed that J.B. "was really quiet" and that Cruz was not as affectionate toward her and the children as he ordinarily was.

During the car ride home, J.B. told his mother that Cruz had sexually assaulted him, describing in detail what occurred. J.B.'s mother immediately reported the incident to the El Paso Police Department. After the responding officer interviewed J.B. and his mother, the case was assigned to Detective Randy Serna for further investigation. Serna spoke to J.B.'s mother and scheduled an appointment for J.B.'s forensic interview, which took place December 2, 2011. Based on the information gleaned from the forensic interview and his investigation, Serna obtained an arrest warrant for Cruz, who was subsequently indicted for and tried on two counts of indecency with a child by contact.

During the State's voir dire, the prosecutor asked the venire members who among them could not presume Cruz was innocent until proved guilty in light of the charges levied against him. Numerous members indicated that, as a general matter, they could not. But two revealed that they could not because of specific personal experiences--one related that her ex-husband was a child molester and the other shared that his child had been molested. Soon thereafter and before concluding, the prosecutor briefly explained the pertinent law concerning the range of punishment for indecency with a child and asked for a show of hands of those venire members who could not consider the full range of punishment. No member indicated that he or she could not consider the

2

full range of punishment. During his voir dire, defense counsel did not broach punishment. Instead, he began by posing the following question to the panel members:

> I'd like you-all to just think for a moment about how serious this crime is to you, how it -- you know, on a scale of zero to ten; ten being the most serious a crime can be; zero being the least serious, how does this rate to you?

Counsel asked each individual member for his or her answer. After the first sixty-one venire member answered "10," counsel switched tacks, asking for a show of hands if "anyone that we haven't spoken to yet who feels that it isn't a 10[?]" Seven members responded affirmatively to this question.

Counsel then asked the venire members to share their thoughts on the presumption of innocence accorded Cruz. Thirteen venire members stated they could not be fair to Cruz; two disclosed they were victims of crime when they were children; one revealed she was molested as a child; and one stated she wanted to throw up when she heard the charges. Counsel moved onto to Cruz's right not to testify at trial. Three venire members indicated that, if Cruz did not testify, they could not be impartial to him. Counsel continued by asking the panel members whether they could weigh the testimony of each witness equally, since so many of them had disclosed that they had relationships with law enforcement officers. He received mixed responses.

Before ending, counsel raised the topic of a child witness's credibility. In particular, counsel wanted to know whether the panel believed a child could lie about being sexually abused. One member stated that she would not believe a child because in her experience children are susceptible to lie to please adults. Another member shared, "I believe my daughter with the charges that I have pending on the other person . . . he's not innocent." Four declared that they could not be impartial because they believed a child would not lie about sexual abuse, while others

3

thought that the veracity of a child witness depended on his or her age. One of the members who expressed this thought volunteered that she was molested when she was seven.

Both sides made challenges for cause and exercised their peremptory strikes. Although each of the venire members chosen to serve on the jury rated indecency a "10" crime, none stated that he or she had a bias or prejudice in favor of or against Cruz or that he or she was a crime victim or sex crime victim.

At the guilt/innocence phase of trial, the State called six witnesses to the stand, including J.B., his mother, and Serna. Both J.B. and his mother testified to the acts of sexual abuse committed by Cruz. J.B. recounted that the acts occurred when Cruz's parents were not home and while he was watching movies with Cruz. Serna testified to the investigation he conducted, relating that he focused exclusively on Cruz based in large part on the information provided to him by J.B.'s mother. Defense counsel cross-examined each of the State's witnesses and called one witness to the stand, Cruz's mother. She testified that Cruz could not have molested J.B. because she was home during the relevant time frame. The jury disagreed, finding Cruz guilty on both charges.

At punishment, each side called only one witness to the stand. J.B.'s mother testified for the State, and Cruz's father testified on behalf of the defense. During the State's closing arguments, the prosecutor beseeched the jury to assess the maximum punishment available for each charged offense. In arguing that Cruz did not deserve mercy, the prosecutor stressed that the children in the community needed to be protected from Cruz because "[h]e works his way into people's families and then he preys on their child" and because "he likes what he likes . . . [h]e likes little boys." The jury assessed the maximum punishment available on each count: 20 years'

4

imprisonment and a $10,000.00 fine.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Cruz contends that counsel rendered ineffective assistance during all three stages of his trial: jury selection, guilt/innocence, and punishment. In his first issue, he asserts that counsel was deficient in seven distinct instances during jury selection and two separate instances during guilt/innocence. In his second issue, he maintains that counsel was inadequate on one occasion during punishment. We disagree.

### *Standard of Review*

A defendant has a constitutional right to effective assistance of counsel in a criminal prosecution. U.S. CONST. AMEND. VI. Claims of ineffective assistance are evaluated under the two-prong test formulated by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Menefield v. State*, 363 S.W.3d 591, 592 (Tex.Crim.App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). Under the first prong, a defendant must show that counsel's representation was deficient, *i.e.*, counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Under the second prong, a defendant must demonstrate prejudice, *i.e.*, there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *Id*. 466 U.S. at 694, 104 S.Ct. at 2068.

In evaluating claims of ineffective assistance, we "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [a defendant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." [Internal quotations omitted]. *Id.,* 466 U.S. at 689,

5

104 S.Ct. at 2065.   Consequently, claims of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate their merit.   *Menefield*, 363 S.W.3d at 592; *Goodspeed*, 187 S.W.3d at 392.   In the majority of cases brought on direct appeal, a defendant will be unable to satisfy the dual prongs of *Strickland* because the record often does not disclose the reasons why counsel acted, or failed to act, in a certain manner.   *Menefield*, 363 S.W.3d at 592-93; *Goodspeed*, 187 S.W.3d at 392.   Without evidence explaining counsel's strategy or methods, a defendant is unlikely to carry his burden of proving by a preponderance of the evidence that counsel was ineffective.   *Menefield*, 363 S.W.3d at 593; *Goodspeed*, 187 S.W.3d at 392; *but see Andrews v. State*, 159 S.W.3d 98, 103 (Tex.Crim.App. 2005)(reversing conviction in a "rare case" for ineffective assistance of counsel on trial record alone, concluding it presented court with sufficient information to decide case where defense counsel failed to object to prosecutor's misstatement of the law on sentencing during punishment closing argument).   In the face of a silent record, counsel's conduct will not be denounced as ineffective unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.   *Menefield*, 363 S.W.3d at 593; *Goodspeed*, 187 S.W.3d at 392.   Absent such outrageous conduct, counsel should ordinarily be afforded an opportunity to explain his actions.   *Menefield*, 363 S.W.3d at 593; *Goodspeed*, 187 S.W.3d at 392.

### *Discussion*

The record is inadequate for us to determine whether counsel was ineffective.   Cruz did not file a motion for new trial alleging ineffective assistance of counsel, nor did he develop a record of trial counsel's reasons for his actions.   Consequently, the record is silent as to counsel's trial strategy.   Because the record is silent, we must assume that counsel acted in furtherance of

6

sound trial strategy.

Cruz neither admits that the record is silent nor accepts that, in the face of a silent record, we may not speculate on counsel's motives. Instead, he submits that the record on direct appeal is adequate to demonstrate ineffectiveness. Without articulating it as such, Cruz is essentially arguing that counsel's conduct was so outrageous that no competent attorney would have engaged in it. But on this record, we cannot so conclude.

## 1. Voir Dire

The majority of Cruz's complaints--seven of ten--concern counsel's performance during the jury selection process. In his first issue, Cruz asserts that counsel was ineffective for failing to:

(1) educate the venire about an alibi defense;

(2-3) identify members of the venire who were victims of crime or of sex crimes;

(4-5):

    (a) request an instruction that if venire members revealed personal experiences, they had to do so at the bench;

    (b) curtail panel answers;

    (c) object to venire member's personal testimonials of child sexual abuse and move for an instruction to disregard; and

    (d) request a mistrial based on those comments;

(6) ask venire members whether they could consider assessing the minimum sentence; and

(7) ask venire members about their feelings toward punishment or their theories of punishment.

According to Cruz, "[t]rial [c]ounsel's [v]oir [d]ire simply failed to give him (and [Cruz]) adequate information so that he could challenge for cause or at least intelligently exercise his peremptory

challenges." In particular, Cruz takes counsel to task for failing to discover the venire members' thoughts on punishment, including whether they believed in rehabilitation and whether they could consider the minimum punishment. He claims that the panel's composition "was utterly horrible as to punishment" because it is inconceivable that the venire members could consider the minimum punishment when so many of them rated indecency akin to murder, aggravated sexual assault, etc.

Cruz's arguments are unavailing. Contrary to his assertions, counsel could have had valid trial strategies underlying his inactions. For example, counsel could have believed that it was more appropriate to allocate his limited time during voir dire (45 minutes) to concerns other than alibi, including credibility, particularly child victims and law enforcement officials, and impartiality in light of the nature of the charged offenses and Cruz's right not to testify. This makes sense because the State's primary witnesses were J.B., his mother, and Serna and counsel's strategy at trial was to attack their credibility during cross-examination. Thus, counsel could have felt it was unnecessary to discuss the alibi defense with the panel, since the evidence supporting it--the testimony offered by Cruz's mother-was weak.

In a similar vein, counsel could have chosen not to spend his limited time asking each venire member if he or she was a crime victim or a sex crime victim. Perhaps it was unnecessary to do so. It is conceivable that the juror questionnaires asked the venire members whether they had been a crime victim or a complainant in a criminal case. Conversely, counsel may have planned to randomly ask some of the jurors if they had been crime victims but decided not to do so after, as Cruz rightly points out, some of the venire members volunteered in response to general questioning in the presence of the panel that they had personal experiences with sex crimes. Cruz

8

counters that counsel should have curtailed and objected to these comments, moved for an instruction to disregard, requested a mistrial based on them, and, at the very least, requested an instruction that venire members had to reveal this type of information at the bench. But if the purpose of voir dire is to elicit information establishing a basis for a challenge for cause and facilitating the intelligent use of peremptory challenges, it makes no sense for counsel to undertake the actions urged by Cruz. Moreover, in most non-death-penalty cases, voir dire is conducted in the presence of the entire panel. TEX.CODE CRIM.PROC.ANN. art. 35.17(1)(West 2006). Presumably, counsel used some of this information to Cruz's advantage because none of the objectionable venire members were seated on the jury.

Given his limited time, counsel could have also believed it was unnecessary to ask venire members whether they could consider assessing the minimum sentence and whether they believed in rehabilitation of sexual offenders. As Cruz rightly points, the State questioned the panel concerning their ability to assess both the minimum and maximum punishment. Since this topic had already been covered, counsel may have felt it would have been futile to discuss the topic with the venire panel any further. Or counsel could have chosen not to broach the subject for Cruz's benefit. After ascertain that many of the venire members rated indecency akin to murder and aggravated sexual assault, counsel could have decided that it was best not to focus the panels' attention on issues like rehabilitation or minimum punishment because that line of questioning may have been futile or, worse, may have led the panel members to believe that Cruz was guilty and was interested in nothing else but getting off with the lightest sentence possible.

In short, counsel's performance at voir dire is supported by conceivable trial strategies. Accordingly, we cannot conclude that his alleged infirmities, individually or collectively,

9

constitute conduct so outrageous that no competent attorney would have engaged in it. Cruz has thus failed to establish that counsel's performance at voir dire fell below an objective standard of reasonableness.

Nor has Cruz demonstrated that, but for counsel's performance at voir dire, the result of his trial would have been different. Cruz intimates that the jurors were predisposed to side with the State because each one of them rated indecency a crime akin to murder and aggravated sexual assault and because their impartiality was poisoned by the "inflammatory" remarks they heard. But nothing in the record indicates that the jurors were not impartial. As mentioned in our discussion of the facts, no juror stated at voir dire that he or she had a bias or prejudice in favor of or against Cruz, that he or she was a crime victim or sex crime victim, or that he or she could not consider the full range of punishment. Even so, Cruz asserts, without citing to the record, "that at least one juror with a close connection to a serious crime sat on the jury."[1] Our review of the record does not substantiate Cruz's assertion. Further, it does not necessarily follow that the jurors were biased as a matter of law against Cruz because they thought indecency with a child was a serious crime or because they heard the remarks of the other venire members, and Cruz cites no authority to the contrary. Cruz's conclusory assertions are insufficient to demonstrate prejudice.

### 2. Guilt/Innocence

The remaining two complaints in Cruz's first issue concern counsel's performance at guilt/innocence. Cruz argues that counsel was grossly inept during his cross-examination of J.B. and Serna because, in each instance, he opened the door to highly prejudicial evidence. Had

---

[1] We can only assume that Cruz has mistaken the identity of one venire member for that of a juror. During voir dire, a venire member identified in the transcript as E. Lopez volunteered that he had "charges pending on a person for sexual assault of [his] daughter." He was not seated on the jury, but a gentleman named Miguel Lopez was. There is no indication in the record that Miguel Lopez "had a close connection to a serious crime."

counsel been effective, according to Cruz, the jury would not have heard J.B. testify that "[Cruz] was playing a movie about a gay teenager at the time he began []molest[ing] [him]" and Serna testify that he believed J.B.'s mother when she told him Cruz's parents were not home when she picked up J.B. on the day in question. Cruz asserts that J.B.'s testimony harmed him because the "State was happy to hammer the point home in final argument at guilt/innocence" and that the investigating detective's testimony harmed him because it "severely damaged the alibi, which was the sole defense at trial."

Cruz's argument is without merit. Again, counsel could have been acting in furtherance of sound trial strategy while cross-examining these two witnesses. Contrary to Cruz's proclamation, alibi was not the sole defensive strategy pursued at trial. As we mentioned previously, counsel's chief defensive strategy was to attack the credibility of the State's witnesses during cross-examination. With respect to J.B.'s mother, counsel's trial tactic was to insinuate that she fabricated the incidents and coached J.B. As for his treatment of J.B., counsel's trial tactic was to intimate that J.B. was mistaken. Viewed with this purpose in mind, counsel's attempt to demonstrate J.B.'s fallibility to the jury by having him commit to testimony that the second movie that evening was "Shrek," not a "weird" one, makes sense. That counsel may have elicited unfavorable testimony while pursuing this strategy does not mean that he was deficient, since effective assistance is not equivalent to errorless assistance. *See Ex Parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App. 1990)(The standard for reviewing trial counsel's performance "has never been interpreted to mean that the accused is entitled to errorless or perfect counsel."). It simply means that this particular line of questioning backfired. With respect to Serna, counsel's trial tactic was to imply that Serna did not conduct a fair and thorough investigation.

11

Viewed with this purpose in mind, counsel's line of questioning was proper because it was designed to show the jury that Serna relied solely on the uncorroborated statements of J.B.'s mother in investigating the incidents.

To sum up, counsel's performance at guilt/innocence is supported by conceivable trial strategies. Accordingly, we cannot conclude that his alleged infirmities, individually or collectively, constitute conduct so outrageous that no competent attorney would have engaged in it. Cruz has thus failed to establish that counsel's performance at guilt/innocence fell below an objective standard of reasonableness.

Cruz has also failed to establish that, but for counsel's performance at guilt/innocence, the result of his trial would have been different. In asserting that he was harmed, Cruz does not discuss, much less challenge, the sufficiency of the evidence supporting his convictions. Excluding the complained-of-testimony, the evidence is more than sufficient to uphold Cruz's convictions. J.B.'s testimony established the elements of each offense, and the forensic interviewer testified that he found J.B. credible. Thus, it is difficult to conclude that, had the jurors not known about the "weird" move, they would not have convicted Cruz. Likewise, it is doubtful that, had the jurors not heard Serna testify that he found J.B.'s mother credible, they would not have convicted Cruz. Like his mother, J.B. testified that Cruz's parents were not home when she picked him up. Thus, the jurors had already heard testimony on this issue from two witnesses before Serna even took the stand. It is likely that, by then, the jurors had already formed an opinion as to the validity of Cruz's alibi defense, which would have been cemented after listening to Cruz's mother testify. Cruz's conclusory assertions are insufficient to demonstrate prejudice.

12

Cruz's first issue is overruled.

### 3. Punishment

In his second issue, Cruz contends that he received ineffective assistance at punishment when counsel failed to object to the prosecutor's impermissible closing argument that an offender who "likes little boys" cannot be reformed or rehabilitated. Cruz asserts that this argument was improper because it was outside the record.

But Cruz mischaracterizes the prosecutor's argument. The prosecutor was not arguing that a sex offender cannot be reformed or rehabilitated; rather, she was arguing that Cruz's appetite for little boys was immutable and, consequently, children in the community would be at risk unless Cruz received a lengthy prison sentence. The prosecutor's argument was permissible, and thus not improper, because it is a plea for law enforcement and it is based on reasonable deductions from the evidence presented at trial. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex.Crim.App. 2008)(proper jury argument generally falls within one of four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to an argument of opposing counsel; and (4) pleas for law enforcement). The evidence supporting the prosecutor's argument consists of testimony that Cruz lavished J.B. with gifts for years, required J.B. to give him massages, kissed J.B. on the mouth once, watched a movie of a homosexual teenager with J.B., and sexually assaulted J.B. by massaging J.B.'s penis and rubbing his penis on J.B.'s "private area." If a jury argument was proper, counsel cannot be ineffective in failing to object to it. *Kuhn v. State*, 393 S.W.3d 519, 538-39 (Tex.App.--Austin 2013, pet. ref'd). Accordingly, Cruz has failed to establish that counsel's performance at punishment was deficient.[2]

---

[2] Cruz also asserts that counsel's cumulative errors amounted to ineffective assistance. But because Cruz has failed to show that counsel's performance was deficient on any ground, there can be no cumulative error or harm.

Cruz's second issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

August 5, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)