**Opinion filed August 21, 2015**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00270-CR

_____

## MARCUS FLORES ALCANTAR, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 24878A**

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant of continuous sexual abuse of a child.  *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2014).  The trial court assessed Appellant's punishment at confinement for a term of twenty-five years.  We affirm.

Appellant presents four issues on appeal.  In his first two issues, he challenges the sufficiency of the evidence.  Appellant argues in his third issue that the trial court erred when it excluded evidence that Appellant offered to impeach the testimony of

the victim.  In his fourth issue, Appellant alleges that the trial court erred when it admitted hearsay testimony.

We will first address Appellant's challenge to the sufficiency of the evidence. Appellant argues in his first issue that the evidence is insufficient to prove that the alleged acts of sexual abuse occurred during a period that was thirty days or more in duration and argues in his second issue that the evidence was insufficient to prove that the alleged acts occurred on or after September 1, 2007.  We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd).  Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the weight to be given their testimony.  TEX. CODE. CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979).  As such, the jury is entitled to accept or reject any or all of the testimony of any witness.  *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).  It is also within the jury's province to resolve any inconsistencies or conflicts in the witnesses' testimony.  *Jackson*, 443 U.S. at 319.

A person commits the offense of continuous sexual abuse of a child when that person commits two or more acts of sexual abuse during a period of thirty days or more in duration.  PENAL § 21.02(b)(1).  "The legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse."  *Michell v. State*, 381 S.W.3d

2

554, 561 (Tex. App.—Eastland 2012, no pet.). The offense became effective on September 1, 2007, and the statute does not apply to acts that were committed prior to that date. *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd). An "act of sexual abuse" includes indecency with a child, other than touching the breast, as provided by Section 21.11(a)(1); sexual assault under Section 22.011; and aggravated sexual assault under Section 22.021. PENAL § 21.02(c)(2)–(4). Here, the grand jury indicted Appellant for the following specific acts of sexual abuse: (1) aggravated sexual assault by penetrating G.F.'s sexual organ with his finger; (2) indecency by touching G.F.'s genitals; (3) indecency by touching G.F.'s breast; and (4) indecency by causing G.F. to touch his genitals. The jury was instructed on each of these specific acts, except for indecency by touching G.F.'s breast. The jury was "not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." *Id.* § 21.02(d). But, the jury was required to "agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id.*

The complainant, G.F., was Appellant's granddaughter. She testified that Appellant started to abuse her when she was in fifth grade. At first, Appellant wanted her to kiss him. This occurred on Bridge Street in Abilene. Then Appellant did something else: he touched her in a "bad place." The first "bad place" that he touched her was on her breasts outside of her clothes. He also touched her on her breasts underneath her clothes. G.F. testified that the next area that Appellant touched was her "private." He went underneath her pants. Later that summer, she moved to the Abilene North Apartments. Appellant continued to touch her. He touched her under her pants and shirt. He touched her breasts and touched her "pee-pee." He tried to stick his finger inside of her "pee-pee," but she moved his finger. This happened more than once. Appellant also asked her to touch his "pee-pee."

She testified that she saw his "pee-pee" and touched it. He showed her how he wanted to be touched; he wanted her to use both hands.

G.F. testified that she did not start the sixth grade in Abilene. She went to visit family in South Dakota. Appellant was with her, and he touched her in South Dakota as well. The abuse lasted for the "whole summer" before she moved to South Dakota and for the "whole time" she was in South Dakota. The abuse stopped when she moved back to Abilene.

On cross-examination, G.F. admitted that she told Melinda Beard, the forensic interviewer, that the first time it happened was in fourth grade at the house on Bridge Street and that there was no touching, just kissing. She agreed that was the summer of 2007. She also admitted that she told Beard that nothing else happened until South Dakota, which was the summer of her sixth grade year, and that she did not let him put his finger in her. On redirect, she agreed that she did not tell Beard the whole story; she was not ready.

Beard testified that G.F. told her that the abuse started when she was in fourth grade and that she thought it was the summer. G.F. was fourteen years old when Beard interviewed her on August 22, 2011. G.F. also told her that it happened once in Abilene and that all the other times were in South Dakota. Beard explained that G.F. told her some things, but she did not know whether G.F. was able to tell her everything that happened.

Susan Sutton, the girlfriend of G.F.'s father, testified that she met G.F. when G.F. was in the fourth or fifth grade. G.F. came to live with Sutton in March 2011; she had been living in South Dakota.

In addition to the specific testimony above, the State created a timeline that showed what grade G.F. was in and what age she was during the years 2007 through 2011. The timeline shows that G.F. was born in December 1996. The timeline also shows that she was in fourth grade in Abilene from September 2007 to May 2008,

4

that she was in fifth grade in Abilene from September 2008 to May 2009, that she was in sixth grade in South Dakota from September 2009 to May 2010, and that she was in seventh grade in South Dakota from September 2010 to March 2011. She moved back to Abilene from South Dakota in the middle of her seventh grade year.

During his interview with police, Appellant admitted that he touched G.F.'s breast and that he "rubbed" her a couple of times; there was no penetration. Appellant also admitted that it happened in Abilene and South Dakota. It happened more times in South Dakota than it did in Abilene, but it happened a few times in Abilene. He was not sure whether G.F. was ten, eleven, or twelve when it started; he gave each of those ages throughout the interview. When police interviewed Appellant in September 2011, Appellant was sixty-three years old.

There is no question in this case that the evidence is sufficient to show that Appellant abused G.F. on multiple occasions over several years. Appellant argues, however, that the evidence does not show that the abuse occurred in Texas after September 1, 2007, and for a period of thirty days or more in duration. We disagree. The jury is entitled to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319. The evidence shows that G.F. moved to South Dakota to go to sixth grade and that the abuse lasted the "whole time" that she was in South Dakota as well as at least the "whole summer" before she moved to South Dakota. The summer before she moved to South Dakota would have been the summer of 2009. G.F. would have been twelve at that time, given that she was born in December 1996. Although G.F. did not provide specific dates as to when the abuse in Texas occurred, she agreed that it occurred the "whole summer" before she moved to South Dakota. She testified that some instances occurred on Bridge Street and some instances occurred at the Abilene North Apartments.

The jury could have reasonably concluded that the "whole summer" was a period of time that lasted at least thirty days. "Summer" typically means the time

5

during the year when children are out of school.  One definition of "summer" is "the season between spring and autumn comprising in the northern hemisphere usu[ally] the months of June, July, and August or as reckoned astronomically extending from the June solstice to the September equinox."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1250 (11th ed. 2004).  Here, the school years were referred to as lasting from September through May.  Thus, it is a reasonable inference that the summer lasted from June through August.  We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant committed two acts of sexual abuse against G.F. after September 1, 2007, and that the acts occurred over a period of time that was at least thirty days in duration.  We overrule Appellant's first and second issues.

Appellant contends in his third issue that the trial court erred when it excluded the video recording of Beard's forensic interview of G.F.  Defense counsel offered the recording to impeach G.F. by showing that G.F.'s trial testimony was inconsistent with her prior statements.  Appellant concedes that the video is not a part of the appellate record; however, he alleges that it is apparent from the record that the video contained some information that could have been used to impeach G.F.'s testimony.  Even if we were to agree that the content is apparent from the record, we cannot say that the trial court abused its discretion when it excluded the video.  When defense counsel argued that the video should come in as a prior inconsistent statement made by G.F., the trial court responded: "I'm not disagreeing with you but you offered the whole video.  You didn't offer parts of it that would impeach her so until you do that I'm not going to admit it."  Defense counsel did not make an attempt to redact the video, nor did counsel re-offer any specific portion of the video.  "When a trial judge is presented with a proffer of evidence containing both admissible and inadmissible statements and the proponent of the evidence fails

6

to segregate and specifically offer the admissible statements, the trial court may properly exclude all of the statements." *Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002). Therefore, the trial court did not err when it denied Appellant's request to admit the entire video. We overrule Appellant's third issue.

In his fourth issue, Appellant asserts that the trial court erred when it admitted hearsay testimony by Sutton. Sutton testified that G.F. called her and said that G.F. wanted to come live with her and G.F.'s father. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is not admissible unless provided by statute, the Rules of Evidence, or by other rules prescribed under statutory authority. TEX. R. EVID. 802.

The State contends that this testimony was not offered for the truth of the matter asserted but was offered to show what Sutton did with the information and to show that G.F. moved back to Abilene. *See Meier v. State*, No. 07-08-0209-CR, 2009 WL 3335282, at *5 (Tex. App.—Amarillo Oct. 16, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that testimony was not hearsay when witness testified about a phone call she received and what she did with the information that she learned during the call). We agree that the testimony at issue was not offered for the truth of what G.F. said during the phone call, but was instead offered to show that G.F. called and that, as a result, Sutton and G.F.'s father moved her back to Abilene. Therefore, the trial court did not abuse its discretion when it overruled Appellant's hearsay objection.

However, even if the trial court did err, we find that the error did not affect Appellant's substantial rights. Pursuant to TEX. R. APP. P. 44.2(b), an error is not reversible error unless it affects a substantial right of the defendant. A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An accused's

substantial rights are not affected by the erroneous admission of evidence if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). The improper admission of evidence is harmless when the same facts are proven by other properly admitted evidence or evidence that is admitted without objection. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986).

Here, G.F. testified that she called Sutton in March 2011 and told Sutton that she wanted to come live with her. G.F. also testified that her father and Sutton came to get her and brought her back to Abilene. She eventually told Sutton what was happening with Appellant. As the State correctly alleges, G.F.'s testimony proved the same facts that were admitted through Sutton's testimony. Thus, the error, if any, was harmless. *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984) ("an error in admission of evidence is cured where the same evidence comes in elsewhere without objection"). Appellant's fourth issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


August 21, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.