# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00238-CR

**Shriya Biman Patel, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. D-1-DC-12-900230, HONORABLE DAVID CRAIN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The State indicted appellant Shriya Biman Patel on one count of capital murder and two counts of murder for the death of her husband, Bimal Patel. *See* Tex. Penal Code §§ 19.02, 19.03. The State elected to proceed only on the capital-murder charge. The jury found appellant not guilty of capital murder but guilty of the lesser-included offense of arson causing death and assessed punishment at twenty years' imprisonment. *See id.* §§ 12.32, 28.02. On appeal, appellant challenges the sufficiency of the evidence to prove the offense of arson causing death and alleges error in the jury charge. We will affirm the trial court's judgment.

## BACKGROUND

The evidence in the record shows that appellant's husband, Bimal Patel, was badly burned in a fire in the couple's apartment on the evening of April 17, 2012, and ultimately died from his injuries. Although appellant and Patel had married in India months earlier, appellant had only

recently moved to the United States after completing the immigration process from India. A neighbor of the Patels who also worked for the Travis County Sheriff's Office was the first person to arrive at the scene of the fire because he was walking his dog when he heard Patel screaming for help. The neighbor testified that Patel "was screaming that his wife set him on fire." The neighbor saw Patel on an apartment balcony with skin and smoke coming off of him and ran home to call 911. He then ran to Patel's apartment, and as he approached the front door, he smelled a "really, really strong" odor of gasoline. When he opened the door, he saw appellant standing at the door holding a purse behind her back. She said "I need to go" and acted as though she was going to leave. He said, "You're not going anywhere," and she turned around and walked to a back room of the apartment. She was not screaming and "seemed pretty calm." Patel walked in from the patio yelling, "Please help me. My wife set me on fire." He was bleeding on his arms, his skin was coming off, and he looked black and charred on his upper body. Police and paramedics soon arrived. A law-enforcement video made outside the apartment on the night of the fire and admitted into evidence at trial included audio in which a police officer stated that Patel told him that Patel had been in the bathtub, that appellant was going to give him a sensual massage and pour oils on him, but that appellant then burned him instead.

Paramedics transported Patel to a hospital. One of the paramedics testified that Patel was screaming, saying things like, "Why would she do this?" The emergency-room physician testified that Patel was "critically ill" and screaming in pain, saying, "Why would anyone do this to me? Why would she do this to me?" The doctor also noted that Patel's nasal passages appeared to be packed with something. Medical personnel transported Patel by helicopter to another hospital.

2

The treating physician at the new hospital testified that Patel had third-degree burns over seventy-seven percent of his body. During the following months, Patel had seventeen surgeries. He ultimately died from his injuries on September 8, 2012, and a medical examiner ruled the death a homicide.

Investigators who inspected Patel's apartment after Patel was taken to the hospital found a five-gallon plastic bucket containing gasoline residue in the hallway near the bathroom. A plastic cup was standing upright inside the bucket. Investigators also found a towel and two pairs of shorts soaked with gasoline on the floor of the apartment and a gas can with the lid partially open in a closet near the bathroom. The smoke detector in the apartment had been removed from the ceiling, and a sprinkler head in the bathroom and a second one in the hallway near the bathroom had been covered with fabric and tape. A fingerprint examiner later identified appellant's fingerprints on the bucket, gas can, and material taped to the sprinkler heads, including the adhesive side of a piece of tape.

An arson investigator testified that his investigation of the apartment led him to conclude that the fire originated in the bathroom and that Patel did not start the fire himself. The investigator believed that someone had thrown gasoline into the bathroom onto a lit candle while Patel was lying in the bathtub. He further testified that he believed Patel kicked out the bottom of the bathroom door, which had become sealed shut by the fire, to escape the bathroom.

Further evidence—including surveillance videos from a Walmart and a gas station near the apartment; testimony from a taxi driver; and a receipt from Walmart found in the

3

apartment—showed that on the day of the fire, appellant purchased the tape and candles found in the apartment, bought a gas can, and filled the can with gasoline before returning to the apartment.

During trial, the defense argued that Patel committed suicide and that appellant was guilty only of following his instructions and assisting in his suicide. At the close of trial, the jury found appellant not guilty of capital murder but guilty of the lesser-included offense of arson causing death. The jury then assessed punishment at twenty years' imprisonment. This appeal followed.

## DISCUSSION

Appellant contends that the evidence presented at trial is insufficient to support her arson conviction and that the trial court erred in including an instruction on the law of parties in the jury charge. We will consider each issue below.

### *Sufficiency of the Evidence*

When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences that can be drawn from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In our analysis, we assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We consider only whether the jury reached a rational decision. *See Isassi*, 330 S.W.3d at 638 ("Our role on appeal is restricted to

4

guarding against the rare occurrence when a factfinder does not act rationally." (quoting *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009))).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge is one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the indictment. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013).

Here, the State indicted appellant for capital murder and murder. The State then elected to proceed only on the capital-murder charge and the lesser-included offense of arson causing death. The jury convicted appellant of the lesser-included offense. On appeal, appellant contends that her conviction for arson causing death should be overturned because the evidence presented at trial is insufficient to establish that: (1) she intended to "destroy" Patel's habitation as set forth in the application paragraph of the jury charge; and (2) she had the requisite knowledge set forth in the arson statute and jury charge. With respect to the offense of arson, the abstract portion of the jury charge stated:

> A person commits Arson if she starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage any habitation:

5

knowing that it is within the limits of an incorporated city or town or

knowing that it is located on property belonging to another or

when the person is reckless about whether the burning or explosion will endanger the life of some individual.

The application paragraph of the jury charge stated:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Shriya Biman Patel, on or about the 17th day of April, 2012 in the County of Travis and State of Texas, did then and there start a fire, regardless of whether the fire continued after ignition, or caused an explosion with intent to destroy a habitation occupied by Bimal Patel

knowing that it was within the limits of an incorporated city, to wit: Austin, Texas and/or

knowing that it was located on property belonging to another, to wit: Camden Huntington

and/or

Shriya Biman Patel was reckless in so doing by consciously disregarding the risk that the fire would endanger the life of Biman [sic] Patel

And the said Shriya Biman Patel by reason of the commission of said offense did thereby cause death to be suffered by Biman [sic] Patel, you will find the defendant guilty of Arson and so say by your verdict, but if you do not so believe or if you have a reasonable doubt thereof, you will find the defendant not guilty of the offense of Arson and so say by your verdict.

We will address each of appellant's arguments separately below.

6

## A.     Evidence of intent to "destroy"

Appellant contends in her first argument that the arson statute and the abstract portion of the jury charge authorized the jury to convict her for arson based on evidence that she intended to "destroy or damage" a habitation but that the application paragraph narrowed the scope of proof to proof of intent to "destroy" the habitation.  She asserts that the State must therefore have proven that she had the intent to "destroy" the habitation and that the State did not do so because "the only evidence concerning intent focused on harming [Patel]" and "[t]here is no evidence showing appellant intended to destroy the habitation by fire."

We need not decide whether the State was bound by the term "destroy" in the application paragraph rather than the terms "destroy or damage" in the abstract paragraph of the jury charge because we conclude that even if the State were held to the higher standard of proof, the evidence is sufficient to establish that appellant intended to destroy the habitation.  A person acts with intent "with respect to the nature of [her] conduct or to a result of [her] conduct when it is [her] conscious objective or desire to engage in the conduct or cause the result."  Tex. Penal Code § 6.03(a).  Because "destroy" is not defined in the statute, we look to the common, ordinary meaning of the word.  *See Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008).  In *Williams*, the Texas Court of Criminal Appeals determined that the use of the term "destroys" in the statute prohibiting tampering with evidence meant that the thing destroyed was "ruined and rendered useless."  *Id.*  We adopt the same interpretation in the arson context and thus conclude that the State was required to prove that appellant had the intent to ruin the apartment and render it useless when she started the fire.

In turning to the evidence in the record, we first note that the arson investigator testified that the fire originated in the bathroom and that he believed Patel was burned in the bathtub. He testified, consistent with photos admitted into evidence, that the bottom of the bathroom door had been kicked open and that he believed appellant had kicked the door open to escape from the bathroom after the fire sealed the door shut. We keep this evidence in mind in light of appellant's argument that the only evidence presented at trial as to her intent was evidence that she intended to burn Patel, not the apartment. The evidence of appellant's intent to destroy the apartment includes the following: (1) the arson investigator who examined the scene testified that the sprinkler head in the bathroom of the apartment had been covered with cloth and tape before the fire burned most of the covering off; (2) pictures taken of the scene show remnants of cloth and tape on the sprinkler head; (3) the arson investigator testified that the sprinkler head in the hallway of the apartment was covered with cloth and tape; (4) pictures of the hallway show that the sprinkler head was covered as the investigator described; (5) a fingerprint examiner testified that appellant's fingerprints were found on the material taped to the sprinkler heads, including the adhesive side of a piece of tape; (6) the investigator testified that a smoke-detector device had been removed from its wiring on the ceiling of the hallway and that he found the smoke detector outside of the kitchen; (7) the crime-scene specialist who collected evidence from the scene testified that he collected the smoke detector from where he found it sitting on top of a speaker under a counter in the dining room of the apartment; (8) pictures of the scene show the exposed wiring where the smoke detector should have been and the smoke detector lying on a speaker in the dining room; (9) the arson investigator testified that he found a blue towel that "reeked of gasoline" in the hallway of the apartment and boxer shorts

8

and other items soaked with gasoline throughout the apartment; (10) the crime-scene specialist testified that he collected the blue towel soaked with gasoline from the hallway of the apartment and two pairs of shorts soaked with gasoline from the living room of the apartment; (11) pictures of the scene show the blue towel on the floor of the hallway and the shorts on the floor of the living room; (12) the fire was strong enough to cause third-degree burns over seventy-seven percent of Patel's body and burn and melt several items in the bathroom, including the door, which melted to the door frame, a plastic vent cover, a phone-jack cover, and a towel rod; (13) the neighbor who called 911 testified that, while walking up the stairs to Patel's apartment, "it smelled really, really strong of gasoline"; (14) one of the paramedics at the scene testified that, as he approached the apartment, he smelled "a strong odor of . . . something like a petroleum-type smell of burning"; and (15) the arson investigator testified that, as he approached the apartment, "the smell of gasoline was very, very strong" and that, after entering the apartment, the smoke and gas fumes were so strong in the bathroom that the investigators had to leave the apartment for five to ten minutes before returning to examine the scene.

Viewing the evidence in the light most favorable to the verdict, we disagree that the only evidence of intent was evidence of intent to burn Patel. The evidence shows that Patel was in the bathroom with the door closed when the fire began, yet the smoke-detector in the hallway of the apartment had been disabled, the sprinkler in the hallway had been covered and sealed, a gas-soaked towel and two pairs of gas-soaked shorts were left lying in the hallway and living room of the apartment, and the smell of gasoline was so strong that people could smell it as they walked toward the apartment from outside. Given all of the evidence, particularly the evidence of what occurred

9

outside the bathroom and the evidence of the measures taken to hinder suppression of the fire, we conclude that a rational jury could have found beyond a reasonable doubt that appellant intended to destroy the apartment when she started the fire. *See Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360.

## B.     Evidence of requisite knowledge

Appellant also challenges the sufficiency of the evidence to establish that she had knowledge that (1) Patel's habitation was "within the limits of an incorporated city, to wit: Austin, Texas;" or (2) Patel's habitation was "located on property belonging to another, to wit: Camden Huntington;" or (3) she was "reckless in [starting the fire] by consciously disregarding the risk that the fire would endanger the life of Biman [sic] Patel." We note that in a legal-sufficiency analysis, we consider circumstantial evidence as well as direct evidence, and we also consider all reasonable inferences that may be drawn from the cumulative evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.").

A review of the record here shows that the State presented sufficient evidence to prove that appellant knew that Patel's habitation was within the city limits of Austin. Specifically, a friend of Patel's who attended Patel and appellant's wedding in India testified that Patel spent months after the wedding navigating the immigration process in order to get appellant admitted into the United States, and appellant finally arrived in Austin within only weeks of the fire. A text message sent from Patel to a friend approximately two months before the fire and admitted into

evidence by the defense also shows that Patel was actively engaged in the process of getting appellant admitted to the United States and that appellant had an immigration interview scheduled for two weeks later. A jury could reasonably infer based on the evidence that appellant, as the person actually immigrating to the United States, also participated in the immigration process along with Patel and that, having participated in the process and then traveled from her native country to her new country, would know the name of the new city in which she was residing. Further, exhibits admitted by the defense show that appellant became sick after she arrived in Austin and that she went to a medical clinic in Austin two days before the fire. The medical records from the clinic provide appellant's name and address at Patel's residence in Austin. Prescription receipts from a Walgreens in Austin dated the same day as appellant's visit to the clinic display, among other things, appellant's name and her address at Patel's residence in Austin. Surveillance videos, the testimony of a taxi driver, and a receipt from a Walmart found in the apartment further show that, on the day of the fire, appellant called a taxi service from a Walmart in Austin and then directed the taxi driver to drive her to an Exxon station, a police station, and then her residence at Patel's apartment. The taxi driver testified that he stopped only briefly at the police station before appellant, without getting out of the car, then redirected him to keep going straight to the Camden apartments, which is where Patel's apartment was located.

Although there is no direct evidence that appellant knew that Patel's apartment was in Austin, the cumulative force of all of the circumstantial evidence—including evidence that she and Patel planned for months after their wedding for her to immigrate to the United States and join him at his residence, which was in Austin; that she went to a medical clinic and pharmacy in Austin

11

two days before the fire, where she received documents listing her address as Patel's residence in Austin; and that she went to several other places on her own in Austin and directed a taxi driver to each place—is sufficient for a rational jury to conclude that appellant knew that the apartment in which she resided with Patel was in the city of Austin. *See Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13 ("Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of the all incriminating circumstances is sufficient to support the conviction."); *Bella v. State*, 792 S.W.2d 542, 545 (Tex. App.—El Paso 1990, no pet.).

Where the charge authorizes the jury to convict a defendant on more than one theory in the disjunctive, as it did here, we will uphold the verdict of guilt if the evidence was sufficient on any theory authorized by the jury charge. *See Campbell v. State*, 426 S.W.3d 780, 786 (Tex. Crim. App. 2014). Thus, we need not consider whether the evidence is sufficient to support the other theories regarding appellant's knowledge at the time of the fire.[1] *See id.*; *Pruett v. State*, — S.W.3d — , No. 02-14-00222-CR, 2015 WL 10324059, *2 (Tex. App.—Fort Worth Dec. 10, 2015, pet. filed).

### C. Conclusion Regarding Sufficiency of Evidence

Because we are unpersuaded by appellant's challenges to the sufficiency of the evidence, we overrule her first issue.

---

[1] For the same reason, we need not address appellant's argument regarding the typographical error in the paragraph setting forth the third knowledge theory, which incorrectly listed the victim as "Biman Patel" rather than "Bimal Patel." *See Campbell v. State*, 426 S.W.3d 780, 786 (Tex. Crim. App. 2014).

*Jury Charge*

In her second issue, appellant contends that the trial court erred in submitting an instruction on the law of parties in the jury charge because there is no evidence that she participated as a party with anyone else in committing the offense of arson. The law-of-parties instruction in the jury charge in this case stated:

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

> A person is criminally responsible for an offense committed by another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

In reviewing claims of jury-charge error, we first determine if there was error, and, if there was error, we then decide whether the error caused sufficient harm to warrant a reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd). The amount of harm necessary to warrant a reversal depends on whether the defendant objected to the jury charge. *Ngo*, 175 S.W.3d at 743; *Kuhn*, 393 S.W.3d at 524. If the defendant preserved error with a timely objection in the trial court, as appellant did here, the record need only show "some harm" to warrant a reversal. *See Ngo*, 175 S.W.3d at 743; *Kuhn*, 393 S.W.3d at 524. "Some harm" is shown when the error was "calculated to injure the rights of the defendant." *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988)). In demonstrating

13

that "some harm" occurred, a defendant must show that she suffered some actual, rather than merely theoretical, harm from the error. *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). In assessing harm, we consider (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record as a whole. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); *Almanza*, 686 S.W.2d at 171.

In deciding whether or not to include an instruction on the law of parties in the jury charge, the trial court's task is not to determine whether the State is correct that the defendant is liable under the law of parties but rather to determine whether the evidence raises the issue. *See In re State ex rel. Weeks*, 391 S.W.3d 117, 125 (Tex. Crim. App. 2013). Here, it was appellant herself who advanced a theory that she merely acted as a party to starting the fire and then sought the admission of evidence to support her theory. Specifically, during opening statements, defense counsel stated:

> Another thing you're going to discover is that inside the religion, particularly as it's practiced in India, not the United States, the devotion and the obedience of a wife to her husband is near absolute. You will hear evidence that in the early morning, between 8:30 and 9:30, if I remember the times correctly, [appellant] did go to a Wal-Mart and buy the instruments that were used to cover the sprinklers, the smoke detector, that she bought gasoline. You're also going to hear her explanation of why. And it's simple. Because [Patel] told her to do it.

Appellant ultimately did not testify at trial, but the defense perpetuated its theory that Patel committed suicide by eliciting evidence through the cross-examination of several of the State's witnesses and through the admission of certain exhibits. Specifically, during the defense's

14

cross-examination of Patel's friend, defense counsel emphasized the friend's testimony that Patel's personal financial situation was "meager, at best"; elicited testimony that Patel's father and the other male members of his family were wealthy and successful; and attempted to elicit testimony that Patel was unemployed and under a great deal of pressure at the time of the fire.

The defense also elicited testimony about the cotton packing found in Patel's nostrils in an attempt to prove that Patel started the fire himself. The suggestion was that the cotton was in Patel's nose before the fire started and that it was unlikely another person put it there. Specifically, during the cross-examination of one of the police officers who first arrived on the scene, defense counsel mentioned the law-enforcement video made at the scene in which the officer reported Patel's version of events, and defense counsel then questioned the officer about comments he made in the video regarding how Patel's story did not necessarily make sense, especially given the cotton packing found in his nose. The officer admitted that he thought it odd that Patel's nostrils were packed with cotton. Defense counsel also addressed the cotton packing during the cross-examination of the emergency-room doctor, who testified that he saw the packing in Patel's nostrils when Patel arrived at the hospital and that he had never seen anyone arrive like that unless they were coming in with a nosebleed.

The defense also admitted medical records from Patel's treatment after the fire to show that the cotton packing found in his nostrils was singed, and the defense then used the records to establish through the arson investigator's testimony that the singed cotton suggested that the cotton was in Patel's nose before the fire began. Defense counsel also drew attention during the cross-examinations of the emergency-room doctor and the arson investigator to one of the

15

photographs of Patel admitted by the State that showed the remains of cotton packing in Patel's nostrils.

In further support of the theory that Patel was suicidal, the defense admitted an exhibit that the parties stipulated was a text message from Patel to a friend approximately two months before the fire. In the text, Patel stated:

> Alright man, my dad had surgery yesterday on his good eye, and it didn't go so well so he is back in there now and I have to handle all of the paperwork for the two hotels in Amarillo and get the documents prepared and mailed for my wifes [sic] immigration interview which is in two weeks and I got a letter from the IRS today for a problem on my 2008 tax return and still have two meetings tomorrow morning on top of everything else, so I really need to take the night off. I hope u can understand and just get the meeting with alin knocked out urself [sic] tonight.
>
> Moreso [sic] a personal night meaning I'll probably be going out tonight. I'm fine, but at the same time I feel like I'm about to snap not bad, but moreso [sic] like a superbent treebranch with a lot of weight on it. So hit me up later tonight.

The defense also requested an instruction in the jury charge on assisted suicide, a request that was denied by the trial court, and then further emphasized its theory in closing argument, when defense counsel stated:

> Ladies and gentlemen, [appellant] is guilty beyond a reasonable doubt of assisting in the suicide of her husband. That's what this evidence has shown you this week.
>
> . . . .
>
> They obviously proved to you beyond a reasonable doubt that she bought the items, okay. Wal-Mart tapes. The gas station tapes. That's the kind of proof you want. If they are going to [make] an accusation, that's the kind of proof you want . . . That's all they proved. She bought the items and she helped him.
>
> . . . .

And while we can feel for [Patel], he was a troubled man. We brought you some of that evidence . . . We brought you the evidence of his financial troubles.

. . . .

[T]here's so many expectations on him. There is so much pressure on him. He hasn't lived up to the family expectation. He certainly hasn't done as well as his father and his uncles and cousins. He hasn't done very well at all as a matter of fact.

The one thing an Indian man has to do is get married. And the one thing a husband does is take care of his wife and support her. She finally gets here. He's about to snap before she gets here. But she finally gets here. And he realizes he can't even do the most basic, basic of expectations. He can't provide for her. Pay his rent. He takes her to the doctor, which is why those medical records are in evidence. And if you note, he doesn't want to pay for a lab. They want her to go to the lab and he doesn't want to pay for it. Phone records show you that he was calling his father that whole night. What do you think? For help. Help, Dad. My wife is sick, and I've got nowhere to take her. Probably doesn't make his father very happy. You can't even fulfill the most basic expectations of that family.

Considering the defense's consistent advancement of a theory throughout trial that appellant assisted Patel in starting the fire, the defense's evocation of testimony from the State's witnesses regarding the way in which certain evidence not only did not match Patel's version of events but also suggested that Patel took part in starting the fire; and the defense's pursuit of the admission of exhibits that supported its theory, we conclude that the trial court did not err in determining that the evidence at trial raised the issue of whether appellant participated as a party to the offense of arson. *See Weeks*, 391 S.W.3d at 125.

Further, even if the trial court had erred in submitting the law-of-parties instruction, the error was harmless because there was extensive evidence that appellant was the primary actor in committing the offense of arson in this case. *See Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999) (stating that error in charging jury on law of parties is harmless where evidence

17

clearly supports defendant's guilt as principal actor); *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) (same). The evidence of appellant's guilt as the principal actor is substantial, including the following: (1) several witnesses, including the neighbor who called 911, the police officer who arrived on the scene, a paramedic, and an emergency-room doctor, all testified that Patel was screaming in pain and saying that his wife set him on fire; (2) the neighbor testified that when he opened the door to Patel's apartment, he saw appellant standing at the door holding a purse behind her back, and she was not screaming, "seemed pretty calm," and said, "I need to go"; (3) the arson investigator testified that all of the evidence at the scene supported a conclusion that Patel did not start the fire himself; (4) surveillance videos, testimony from a taxi driver, and a receipt from Walmart found in the apartment showed that on the day of the fire, appellant purchased the tape and candles found in the apartment, bought a gas can, and filled the can with gasoline before returning to the apartment; and (5) appellant's fingerprints were found on a bucket in the hallway that contained a plastic cup and gas residue; a gas can in the hallway closet; and material taped to and covering the sprinkler heads, including the adhesive side of a piece of tape. Considering all of the evidence of appellant's guilt as the principal actor, any error in the submission of the law-of-parties instruction was harmless. *See Ladd*, 3 S.W.3d at 564–65; *Cathey*, 992 S.W.2d at 466.

Because we conclude that the trial court did not err in including the law-of-parties instruction in the jury charge and that, even if the trial court had erred, the error was harmless, we overrule appellant's second issue.

18

**CONCLUSION**

Having overruled all of appellant's issues, we affirm the trial court's judgment of conviction.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   April 7, 2016

Do Not Publish