# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00257-CR

---

### Sabien Armonte Taplin, Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE 426TH DISTRICT COURT OF BELL COUNTY
### NO. 79999, THE HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Sabien Armonte Taplin of the third-degree felony offense of assault on a public servant. *See* Tex. Penal Code § 22.01(a)(1), (b)(1). On appeal, Taplin contends that the trial court erred when it refused to instruct the jury on self-defense. For the following reasons, we modify the judgment of conviction and, as modified, affirm.

## Background

The State's witnesses at trial were the victim Robert Alanis, an officer at the Bell County Jail, and two other officers at the jail. Taplin, an inmate in the jail, did not testify or call any witnesses. The State's evidence was uncontroverted that Taplin threatened and then assaulted Alanis by striking Alanis during an incident that occurred in the hallway outside Taplin's cell when Alanis was collecting trash from inmates' cells and with other inmates in the hallway.

Alanis testified that, when he had the door opened "about halfway" to Taplin's cell so he could collect trash, Taplin "started being aggressive and yelling towards" Alanis, "stepped out" of his cell, "got in [Alanis's] face and to where [Alanis] felt unsafe," and "lunged towards [Alanis]" making Alanis "feel unsafe." According to Alanis, when the cell door was opened, Taplin told Alanis that he was "going to fuck you up for messing with my brother."[1] Alanis testified that after he felt "unsafe," he "started trying to escort [Taplin] back into his cell where [Taplin] became violent and started striking." Consistent with Alanis's testimony, a 5:52-minute video recording of the incident that was admitted as an exhibit at trial shows Alanis rolling the trash can down the hallway until he reached Taplin's cell, Taplin leaving his cell, moving quickly toward Alanis in the hallway outside of Taplin's cell, and getting very close to Alanis and in his face before Alanis placed his hands on Taplin. Alanis also testified that he was doing his job when he tried to gain control of Taplin by placing his hands on him and directing him back to his cell. Alanis explained that his job is to try to control this type of situation for the "[s]afety and security of us as officers and for the people that we house that are incarcerated" and that he "used verbal commands" like "let's get back inside" and placed his hands on Taplin to try to get him to return to his cell.

One of the other officers testified that he "went down to try to assist and try to help" when he "saw Mr. Taplin had Mr. Alanis in a headlock" and that Taplin initially did not cooperate with the officer's attempts to restrain him. The officer "tr[ied] to restrain [Taplin]'s arms so that he [could not] strike Robert Alanis or anything, to not bring any more harm to him." The other officer testified that he also assisted Alanis after Taplin had Alanis's "head in a

---

[1] There was evidence that another inmate in a "trustee" position told Taplin that Alanis assaulted Taplin's brother. The evidence, however, was uncontroverted that Alanis did not do so.

headlock" and that he "ran to assist and deescalate the situation and help secure the inmate." He agreed that an officer may direct an inmate back to his cell by use of physical contact and that this particular situation was "even more" dangerous because of the other individuals in the hallway. The video recording shows six inmates in the hallway prior to the third officer arriving to assist Alanis and, after the third officer's arrival, two to three additional inmates are seen in the hallway.

During the charge conference, Taplin's counsel asked for "some type of language about self-defense," arguing:

> The only thing I would ask for is some type of language in the charge because it appears to me that Mr. Taplin acted only after some type of force was used against him. What the degree of force is, obviously, is up to the jury, but it does appear that it was only at that time that he acted. So we would ask for that.

After the State responded that it was opposed to an instruction on self-defense because "the video clearly shows a touching that is not forced, as well as you don't get to initiate the altercation and then claim self-defense," the trial court denied the request for an instruction on self-defense.

The jury found Taplin guilty and, during the punishment phase of trial, Taplin pleaded true to an enhancement paragraph, *see* Tex. Penal Code § 12.42(a) (enhancing punishment for third-degree felony to punishment for second-degree felony when defendant has been finally convicted of felony), and the jury assessed punishment at confinement in the Texas Department of Criminal Justice (Institutional Division) for a term of fourteen years, *see id.* § 12.33. This appeal followed.

3

## Analysis

In his sole issue, Taplin argues that the trial court erred when it refused to charge the jury on self-defense and that he was harmed by this error. Specifically, he argues that his response to Alanis "was *defensive* in nature" and that "a reasonable and rational jury could have concluded that Taplin was afraid of being beaten by Alanis, and that he therefore acted in self-defense when Alanis placed his hands on his chest despite the disparity in their positions and authority."

## Standard of Review

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the complaint about jury charge error was preserved in the trial court, "then reversal is required if there was some harm to the defendant." *Marshall*, 479 S.W.3d at 843.

In this appeal, Taplin challenges the trial court's refusal to instruct the jury on self-defense. "A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense." *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013) (citing *Allen v. State*, 253 S.W.3d 260, 267 (Tex.

4

Crim. App. 2008)). The defendant "'bears the burden of production' with respect to a defense," *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007) (quoting *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)), and "the issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense," *Kuhn v. State*, 393 S.W.3d 519, 532 (Tex. App.—Austin 2013, pet. ref'd) (quoting Tex. Penal Code § 2.03(c)); *see Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007) (discussing defendant's right to jury instructions on defensive issues). "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw*, 243 S.W.3d at 657–58; *see Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) ("The defendant bears the burden of showing that each element of the defense has been satisfied."). In determining whether a defense is thus supported by the evidence, the court views the evidence in the light most favorable to the defendant's requested jury instruction, *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020), and relies "on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven," *Shaw*, 243 S.W.3d at 658.

**Self-Defense**

Relevant to this appeal, section 9.31(a) of the Texas Penal Code establishes the elements of self-defense and provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code § 9.31(a); *see Alexander v. State*, No. 03-14-00290-CR, 2016 Tex. App. LEXIS 531, at *8–9

5

(Tex. App.—Austin Jan. 21, 2016, pet. ref'd) (mem. op., not designated for publication) (describing elements of self-defense and type of evidence that statute requires). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code § 1.07(a)(42).

"[T]o be entitled to a jury instruction on the issue of self-defense, there must be some evidence in the record of the defendant's state of mind or 'observable manifestations' of the defendant's state of mind at the time he used force against the complainant" and evidence that the "defendant had a 'reasonable belief' that his use of force was immediately necessary to protect himself from the other's use or attempted use of unlawful force." *Alexander*, 2016 Tex. App. LEXIS 531, at *9 & n.12 (citing *VanBrackle v. State*, 179 S.W.3d 708, 713 (Tex. App.—Austin 2005, no pet.); *Reed v. State*, 703 S.W.2d 380, 385 (Tex. App.—Dallas 1986, pet. ref'd) (per curiam))[2]; *see Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984) (requiring some evidence in record to show that defendant was in some apprehension or fear of being recipient of unlawful use of force from complainant to raise self-defense); *Vasquez v. State*, No. 01-17-00597-CR, 2018 Tex. App. LEXIS 9748, at *8–10 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, pet. ref'd, untimely filed) (mem. op., not designated for publication) (providing examples of "'observable manifestations' of a defendant's state of mind" at time of alleged act of self-defense); *Alexander*, 2016 Tex. App. LEXIS 531, at *8–9 & n.12 (same).

When the defendant does not testify, the issue of the defendant's state of mind "may be raised by the testimony of witnesses who testify to the defendant's acts and words at the time of the offense." *Reed*, 703 S.W.2d at 385–86 (citing *Smith*, 676 S.W.2d at 584); *see*

---

[2] *See VanBrackle v. State*, 179 S.W.3d 708, 713 (Tex. App.—Austin 2005, no pet.); *Reed v. State*, 703 S.W.2d 380, 385 (Tex. App.—Dallas 1986, pet. ref'd) (per curiam); *see also* Tex. R. App. P. 47.7(a) (authorizing citation to unpublished opinions).

6

*Arevalo v. State*, No. 01-19-00085-CR, 2020 Tex. App. LEXIS 2366, at \*8–10 (Tex. App.— Houston [1st Dist.] Mar. 24, 2020, pet. ref'd) (mem. op., not designated for publication) (requiring evidence of defendant's "subjective belief at the time of the assault"; concluding that defendant was not entitled to self-defense instruction where "none of the testimony showed an observable manifestation of appellant's subjective belief at the time of the assault"; and collecting cases in which courts denied request for self-defense instruction because there was no evidence of defendant's subjective state of mind).

As support for his position that the trial court erred when it did not include a self-defense instruction to the jury, Taplin argues that "there was ample evidence adduced at trial to justify the idea that [he] might have believed that force was necessary to defend himself from Alanis" and that "[w]hether that belief was reasonable was for the jury to decide." He relies on the evidence that he "became physical only *after* Alanis place[d] his hands on Taplin's chest" and that he "had been told—truthfully or not—by another inmate in a 'trustee' position that Alanis had previously assaulted his brother." Taplin argues that "[a] reasonable inference may be made that, not only did [he] believe the false information he had been given, he was fearful that the same fate might await him at Alanis'[s] discretion" and that "Taplin, under the circumstances, may have feared that *he* was about to be assaulted by Alanis just as his brother had been."

Even if believed by the jury, however, the evidence that another inmate told Taplin that Alanis had assaulted Taplin's brother at some unidentified time is not evidence of "observable manifestations" of Taplin's acts or words when he assaulted Alanis that would support a rational inference that Taplin's subjective state of mind was one of fear when he assaulted Alanis. *See Reed,* 703 S.W.2d at 385–86; *see also Shaw*, 243 S.W.3d at 658;

7

*Alexander*, 2016 Tex. App. LEXIS 531, at *9 & n.12 (providing evidentiary examples of "observable manifestations" of defendant's state of mind including "evidence tending to show that the defendant 'called for help' during an altercation or that the defendant told the complainant to 'leave [him] alone' as they struggled"). Rather the evidence of appellant's acts and words at the time of the incident showed him leaving his cell, aggressively approaching and threatening Alanis by stating that he was "going to fuck [Alanis] up for messing with my brother," *see* Tex. Penal Code § 22.01(a)(2) (defining assault by threat as "intentionally or knowingly threaten[ing] another with imminent bodily injury"), and not obeying Alanis's verbal command to "get back inside" his cell. The video recording also shows Alanis initially giving ground to Taplin's actions by moving himself and the trashcan away from Taplin as Taplin continued to move toward Alanis until he was very close and in Alanis's face prior to Alanis placing his hands on Taplin.

Furthermore, to be entitled to a self-defense instruction, there had to be some evidence that Taplin reasonably believed his use of force was immediately necessary to protect himself against the use or attempted use of *unlawful* force. *See id.* § 9.31(a). The uncontroverted evidence was that Alanis did not act unlawfully during the incident but within his job duties as an officer at the jail when, immediately after Taplin threatened him and aggressively moved toward Alanis, Alanis placed his hands on Taplin and tried to gain control of Taplin to place him back in his cell. Thus, no evidence showed that Alanis used or attempted to use unlawful force against Taplin.[3]

---

[3] Based on the video recording, from the time that Taplin leaves his cell until another officer arrives to assist Alanis was approximately 30 seconds. The dissent concludes that the video recording "is quite different" from Alanis's testimony at trial and that there was "sufficient evidence" to raise self-defense based on the statement about Alanis assaulting Taplin's brother

8

Because the record does not reflect evidence that would support a rational finding on each of the elements of self-defense, Taplin was not entitled to an instruction on the issue. *See* Tex. Penal Code § 9.31(a); *Juarez*, 308 S.W.3d at 404 (stating that "defendant bears the burden of showing that each element of the defense has been satisfied"); *Shaw*, 243 S.W.3d at 657–58 (requiring some evidence of each element of defense that, if believed, would support rational inference that element is true); *Kuhn*, 393 S.W.3d at 532. On this basis, we overrule Taplin's sole issue.

## Clerical Error in Judgment

The judgment reflects that the enhancement paragraphs and the findings as to the enhancement paragraphs were "N/A," but Taplin pleaded true to the State's enhancement paragraph, and the trial court instructed the jury to find the enhancement paragraph to be true. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment to reflect that Taplin pleaded "True" to the State's enhancement paragraph and that the jury's finding on the enhancement paragraph was "True."

---

and Alanis's actions approximately 15 seconds after Taplin left his cell—"when Taplin was backed against the wall"—because, a few seconds earlier, Taplin and Alanis were "no longer within the distance at which, according to [the officers], an officer would need to get control of the situation by placing hands on the inmate." The fluid nature, context, and reality of the incident distinguish our facts from an encounter between two individuals on the street—it was not. *See Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007) (noting that court relies "on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven"). It occurred in the hallway of the jail right outside Taplin's cell and with other inmates in the hallway, beginning with Taplin leaving his cell and aggressively approaching and threatening Alanis, an officer at the jail who was acting within his job duties when he tried to gain control of Taplin to place him back in his cell.

## Conclusion

Having overruled Taplin's sole issue but concluded that the written judgment contains non-reversible clerical error, we modify the trial court's judgment of conviction as described above and affirm the judgment as modified.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly
  Dissenting Opinion by Justice Kelly

Modified and, As Modified, Affirmed

Filed:   October 15, 2020

Do Not Publish